## Commonwealth v. Malone.

(Decided January 5, 1911.)

### Appeal from Mason Circuit Court.

1. Pooling Statute—Availability—Crop not Raised by Owner.—The Owner of tobacco or other crop which he did not raise, cause to be raised, or in some manner assist another or others in raising, cannot avail himself of the provisions of the pooling statute as provided by Sec. 3941a Ky. Stat.

2. Protection to Grower of Crop.—The object of the pooling statute is to protect the grower of tobacco against the buyers of the product, who, in the absence of such protection might, by combinations among themselves, have the absolute power to fix the prices at which the grower must sell.

3. Buyer of Tobacco—Raised by Others.—A mere buyer of tobacco raised by others is excluded from the benefits of the pooling statute, and this being true, he cannot legally enter into or be bound by the pooling contract authorized by the Statute. If excluded from its benefits it would be illogical and unjust to subject him to its penalties, and besides, to do so would violate the salutary rule which declares that the operation or meaning of a penal statute shall not be extended by mere implication. (No brief for appellee.)

JAMES BREATHITT, Attorney General, TOM B. M'GREGOR, Assistant Attorney General, M. J. HENNESSEY, Commonwealth's Attorney, for appellant.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellee, Thomas Malone, was indicted by the grand jury of Mason county for unlawfully and knowingly selling and disposing of a crop of pooled burley tobacco, without the consent of the authorized agent selected to sell same, in violation of sub-section 3 of section 3941a, Kentucky Statutes.

A demurrer filed by appellee to the indictment was overruled by the circuit court to which he excepted. He thereupon filed in that court a writing containing, first, a plea of not guilty; second, a plea of former conviction based upon the alleged facts that he had commingled and sold the tobacco described in the indictment with other tobacco he owned and had pooled, and that having been indicted, tried and fined for selling such other tobacco, the conviction in that case was a bar to this.

The court sustained a demurrer filed by the Commonwealth to the latter plea, and to that ruling appellee also excepted. A trial resulted and at the conclusion of the Commonwealth's evidence the court, on appellee's motion, peremptorily instructed the jury to find him not guilty and such was their verdict. Having been refused a new trial, the Commonwealth has appealed.

Appellee's counsel have not filed a brief in this court and that of counsel for the Commonwealth does not advise us of the grounds upon which the peremptory instruction directing appellee's acquittal was granted. We assume, however, that it was because of the absence of any evidence conducing to establish his guilt. This conclusion is fortified by our reading of the evidence appearing in the record. Indeed, the facts alleged in the indictment do not constitute an offense under the statutes, and the demurrer to it should have been sustained.

Section 3941a, which is a part of chapter 103a, Kentucky Statutes, provides:

"It is hereby declared lawful for any number of persons to combine, unite or pool any or all of the crops of wheat, tobacco, corn, oats, hay or any other farm products raised by them, for the purpose of classifying, grading, storing, holding, selling, or disposing of same, either in parcels or as a whole, in order or for the purpose of obtaining a greater or higher price therefor than they might or could obtain or receive by selling said crops separately or individually."

Sub-section 2, section 3941a, declares valid, contracts entered into by persons with each other for the purpose

of pooling, classifying, grading, storing, holding, selling or disposing of the crops therein mentioned "raised" by them, in order to obtain a better or higher price therefor than might be obtained by selling such crops separately or individually.

Sub-section 3 permits persons entering into such an agreement or contract as allowed in the preceding section and sub-section, to select an agent or agents through or by whom to classify, grade, store, hold, sell or dispose of the crops pooled; and the second paragraph thereof provides:

"For any breach or violation of any contract entered into for the purposes set out in the foregoing sections, the injured party may recover the damages sustained by him by reason of such violation of such contract of the person violating the same, and also of any person who shall induce or persuade another to violate such contract, which damages shall include the reasonable expense and attorney's fees incurred by the injured party in prosecuting an action to recover such damages, or to prevent a violation of such contract, if the party complaining shall succeed in doing so, which may be recovered in the same action or original proceeding. Said agent when so selected as herein provided shall have the sole right to sell such crop so pooled or combined, and it shall be unlawful for any owner of such crop to sell or dispose of same and for any person to knowingly purchase the same without the written consent of such agent, and upon conviction thereof he or they shall be fined in any sum or amount not exceeding $250 for each offense, to be fixed by the jury in their discretion."

It will be observed from the reading of the entire statute that the crops pooled under its provisions must be "raised" by the persons pooling them. The owner of tobacco, or other crop, which he did not himself raise, cause to be raised by a tenant or in some manner assist another or others in raising, cannot avail himself of the provisions of the statute. The object of the statute is to protect the grower of tobacco against the buyers of the product who, in the absence of such protection as the statute affords, might by combinations among themselves have the absolute power to fix the prices at which the grower must sell. Therefore, a mere buyer of tobacco raised by others is excluded from its benefits, and this being true he cannot legally enter into or be bound

by the pooling contracts authorized by the statute.    If excluded from its benefits, it would be both illogical and unjust to subject him to its penalties, and besides to do so, would violate the salutary rule which declares that the operation or meaning of a penal statute shall not be extended by mere implication.

The indictment in the instant case alleges, and the proof showed, that the tobacco appellee is charged to have unlawfully sold, was raised by one Mitchell on the land of Tierney and that Mitchell sold it to him.    This being true, the act of appellee in selling it himself, did not make him amenable to the penalty prescribed by the statute.

It is true the indictment further alleges that Mitchell, by such a contract as allowed by the statute, had pooled the tobacco before he sold it to appellee; that the tobacco society with which such contract was made and its selling agent, had consented to the sale of it to appellee and that the latter had even re-pooled it following his purchase and before his sale of it, yet these facts did not bring the subsequent sale of the tobacco by him, though made in violation of the pooling contracts referred to, within the inhibition of the statute, as the tobacco was not raised by him, nor upon his land.

While the statute also provides that one who buys of a grower tobacco in violation of a contract whereby it had been pooled, makes himself amenable to the punishment that may be inflicted upon the grower for selling the same in violation of such contract, appellee is not indicted in this case for buying of Mitchell tobacco which the latter had pooled, but for selling same.

In view of what we have said it follows that the trial court did not err in directing a verdict of acquittal.

Wherefore, the judgment is affirmed.