## Hayes v. Providence Citizens' Bank & Trust Company.

(Decided February 4, 1927.)

### Appeal from Webster Circuit Court.

1. Banks and Banking—Depositor's Action to Recover Money Deposited in Bank which Latter Refused to Pay Held to be on Contract.—Action by depositor to recover from bank which failed to

repay money deposited held to be on contract, and not in tort, since relationship between depositor and bank is creditor debtor; bank becoming sole owner of money deposited, and law implying promise to pay.

2. Names—Failure of One Doing Business Under Fictitious Name to File Certificate Does Not Preclude Recovery on Bank's Implied Contract to Repay Deposits (Ky. Stats., Sections 199b-1, 199b-5).—Failure to file certificate called for by Ky. Stats., section 199b-1, does not preclude one doing business under fictitious name from recovering on bank's implied contract to repay deposits, in view of section 199b-5, prescribing punishment for failure to file certificate.

3. Names—Statute Requiring One Doing Business Under Assumed Name to File Certificate Does Not Make His Contracts Unlawful, Unless Certificate is Filed (Ky. Stats., Section 199b-1, 199b-5).—Kentucky Statutes, section 199b-1, 199b-5, requiring certificate to be filed by one doing business under fictitious name, does not make contracts of such person unlawful, unless such certificate is filed.

4. Names—Statute Requiring One Doing Business Under Fictitious Name to File Certificate Should be Strictly Construed (Ky. Stats., Sections 199b-1, 199b-5).—Kentucky Statutes, sections 199b-1, 199b-5, requiring one doing business under fictitious name to file certificate, being penal in its nature and in derogation of common law, should not be construed to include cases not clearly within it.

C. J. WADDILL and C. W. BENNETT for appellant.

RAYBURN & WITHERS, J. C. CANNADAY and HENSON & TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In this action the appellant claims by his pleadings that between December 6, 1916, and May 25, 1923, inclusive, he deposited with the appellee, during its banking hours, various sums of money aggregating $80,000, all of which sums the appellee received from him for such deposit under the usual banking agreement to properly account to him for the same and to repay the same to him or to his order upon demand. He admits that this banking business was done by him under the name of "The Dreamland Theatre," a business which he individually owned and conducted under such fictitious name. He further claims that the bank did not properly account to him for the money he had so deposited with it, but, on the contrary, fraudulently stole, embezzled, and appropriated to its own use the sum of at least $12,000 thereof,

and refused to pay him the same on demand. He prayed judgment for that sum. Among other defenses, the appellee pleaded that the appellant, during all the time covered by his complaint, had been doing business under a fictitious name; that he had made the alleged deposits with it in the course of such business, and that he had not filed the certificate required by section 199b-1 of the Kentucky Statutes, which reads:

"No person or persons shall hereafter carry on or conduct or transact business in this state under an assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct or transact or intend to conduct or transact such business, a certificate setting forth the name under which said business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons owning, conducting or transacting the same, with the post-office address or addresses of said person or persons. Said certificate shall be executed and duly acknowledged by the person or persons so conducting, or intending to conduct, said business."

In this connection we should also read section 199b-5:

"Any person or persons carrying on, conducting or transacting business as aforesaid, who shall fail to comply with the provisions of this act, shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than twenty-five dollars nor more than one hundred dollars, or imprisoned in the county jail not less than ten days nor more than thirty days, or both so fined and imprisoned, and each day any person or persons continue to conduct business in violation of this act shall be deemed a separate offense."

The appellant, by reply, admitted his failure to file such certificate. On the trial, after all the proof had been introduced, the court dismissed the jury, and, on the motion of the appellee for a judgment on the face of the pleadings, dismissed the appellant's petition. From this

judgment he appeals. The sole question presented on this appeal is whether or not the failure of the appellant to file the certificate called for by section 199b-1 of the statutes precludes him from prosecuting this action.

Although appellant insists that his action sounds in tort and not in contract, it is obvious from the statement of the pleading we have given that it is in contract. Appellant specifically alleges that he deposited this money with the appellee and that the latter received such deposits from him and agreed to repay them to him on demand. He does not aver that the appellee agreed to repay him the identical money which he deposited with it, and in the absence of such averment it must be assumed that the appellee simply agreed to honor his checks as it did those of its other clients in the ordinary course of its business. This being true, the relationship existing between appellant and the appellee was that of debtor and creditor. The appellee, immediately on the deposit, became the absolute owner of the money deposited; the law implying a promise on its part to repay such money on demand. Commercial Bank & Trust Co., et al. v. Citizens' Trust & Guaranty Co. of West Virginia, 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166. The appellee, therefore, was a debtor and not a bailee. The title to the money passed on its deposit from the appellant to the appellee, and, if it was subsequently stolen or embezzled, it was stolen from the appellee and not from the appellant. This being true, if the appellee declined to repay on demand any part of these deposits, such failure constituted a breach of its contractual obligation. It follows, therefore, that, if we apply the principle laid down in the Hunter v. Big Four Auto Co., 162 Ky. 778, 173 S. W. 120, L. R. A. 1915D, 987, and the cases which followed it, we must affirm the judgment of the lower court, for those cases hold that a failure to file the certificate called for by section 199b-1 of the statutes precludes one who has done business under a fictitious name from recovering on any contract made in the course of that business.

In the Hunter case we said:

"It is probable that a rule like this may, in some instances, work a hardship by permitting one person to get the benefit of another person's labor, service or property without compensation."

Experience has demonstrated that this is about all the rule has done, and we have therefore decided to re-examine the question to see if the correct result was arrived at in those cases. We take it that the first consideration to which we should direct our attention is what was the purpose which section 199b-1 of the statutes was obviously intended to accomplish. This question has been answered by this court in the cases of Commonwealth v. Siler, 176 Ky. 802, 197 S. W. 453; Louisville Planing Mill Co. v. Weir Sheet Iron Works, 199 Ky. 361, 251 S. W. 176; Louisville Planing Mill Co. v. Liberty Blow Pipe Works, 201 Ky. 724, 258 S. W. 304, and perhaps others. In the Liberty Blow Pipe Works case we said:

"The primary purpose of the statutory provision was to enable persons dealing with other persons under trade or assumed names to know or be able to ascertain the name or names of the persons with whom they were dealing. . . . After all, the fundamental purpose of the enactment was to enable one to identify the individual who was the owner of the business with which he proposed to deal, to the end that he might exercise his judgment in determining whether or not he was dealing with a responsible person."

From these cases, then, it may be taken as settled that, in general, the object of this statute is for the protection of the public, to give them information as to the persons with whom they deal and to afford them protection against fraud and deceit. But this object is certainly not furthered by permitting the statute to be used as an instrument of fraud whereby one may obtain the goods, property, or service of another and then refuse to pay him for it solely because the latter has failed to file the certificate referred to in the statute.

The next thing to be considered is whether or not the statute makes the contract unlawful. That it does not do so expressly must be conceded. Does it do so impliedly, or must we read into it such a construction in order to accomplish the purpose of the statute? There is nothing inherently vicious in doing business under an assumed name. Such manner of doing business was lawful before the statute was passed. The statute does not undertake to prohibit that mode of doing business, but only seeks to regulate the manner in which such mode of

business should be carried on. The statute being penal in its nature and in derogation of the common law, it should not be construed so as to include within its purview cases which do not clearly come within it. Commonwealth v. L. & N. R. Co. 112 Ky. 783, 66 S. W. 753; 23 Ky. L. R. 1986; Commonwealth v. Malone, 141 Ky. 441, 132 S. W. 1033.

An examination of the statute discloses two very pertinent facts: (a) It expressly imposes for its nonobservance the rather light penalty of a fine between the limits of $25 and $100, or imprisonment from 10 to 30 days, or both; (b) it does not expressly impose any further penalty or consequence. This is a potent indication of a legislative purpose that the penalty expressed should be exclusive. The purpose of the penalty is to secure obedience to the statute to the end that its object may be accomplished. But the object of the statute, as above stated, is certainly not accomplished or even furthered by adding to the penalty expressly imposed the additional one of the loss of goods, chattels, or services sold or performed by one doing business in violation of the statute. Such a cumulative penal result is scarcely commensurate with the evil sought to be remedied. A cursory reading of our statutes discloses that, when the Legislature intended such a cumulative penalty, it was careful to expressly say so. For instance, we have an elaborate statute governing peddlers, providing for their licensing and prohibiting them from doing business without a license. One who peddles without a license is subject to indictment. See Commonwealth v. Heckinger, 19 Ky. L. R. 810, 42 S. W. 101. But the Legislature further provided, as we see from the provisions of Kentucky Statutes, section 4223, that all contracts for articles or rights made with a peddler without a license shall be null and void, except as against said peddler; in other words, the buyer may hold the peddler, but the peddler cannot hold the buyer.

Our Anti-Trust Act of 1890, now repealed, but formerly section 3915, et seq., of the statutes, forbade trusts and combines in restraint of trade and imposed a penalty on those so offending. But the statute also said (section 3918, Carroll's Statutes, 1922 edition):

"Any contract or agreement or understanding in violation of the provisions of the preceding sections of this act shall be null and void; and any

purchasers of property or article, or of any commodity, from any individual, firm, company or corporation transacting business contrary to the preceding sections of this act, shall not be liable for the price or payment of such article or commodity or property, and may plead and rely on this act as a complete defense to any suit for such price or payment."

Our statutes on gaming provide a penalty for the disobedience of them and in addition say (Kentucky Statutes, section 1955):

"Every contract, conveyance, transfer, or assurance, for the consideration, in whole, or in part, of money, property, or other thing won, lost or bet in any game . . . shall be void."

Other instances could be cited to the same general effect. The absence in the statute before us of a like provision is, in the light of these other statutes, quite convincing that the Legislature intended no such result as we attributed to the statute in the Hunter case.

Further, the philosophy of the cases which came after the Hunter case discloses the error inherent in the rule of that case. For instance, the case of Kozy Theater Co. v. Love, 191 Ky. 595, 231 S. W. 249, held that a contract executed by a person doing business under a fictitious name without complying with section 199b-1 of the statutes was not void, but voidable at the election of the other party. This holding is inconsistent with the idea that the contract is illegal, for, if so, it is void, and neither party can recover on it. If the doing of the business under a fictitious name without a compliance with the statute renders a contract entered into in the course of that business illegal, then neither party should recover on it, for the outsider who is charged with notice of what is recorded in the county clerk's office necessarily is charged with notice of the absence of the certificate, and being charged with such notice, participates in an illegal act, and is just as guilty as the other party. However, as the statute was passed for his protection and benefit, as we have seen, no one would contend that he should not recover on the contract, which necessarily means that the contract is not illegal and hence not void. While something may be said for the holding of the Hunter case that the transaction of business without a certificate

makes the contract entered into in the course of that business illegal, and therefore void, yet it is impossible to spell out of the statute that, in addition to the penalties it expressly imposes, one who fails to comply with it while being bound to the outsider on all his contracts may not himself recover on them. . To accomplish such a result, the peddler and Anti-Trust Statutes used express words.

We are therefore of the opinion that, considering the object and purpose of the statute, the fact that it imposes a specific penalty and does not expressly say that contracts such as the one here in question are illegal and void, and that to so extend the statute in no wise accomplishes or furthers the object of the statute, but only serves to encourage fraud and wrong, the correct rule is that the statute does not by necessary implication make such contracts illegal or void, and one who does business under a fictitious name without filing the certificate required, while he is subject to the penalties set out in the statute may yet recover on his contracts, not otherwise objectionable, entered into in the course of that business.

The judgment of the lower court is therefore reversed, with instructions to proceed in conformity with this opinion. Before closing, we wish to call attention to a very exhaustive note on this subject found in 45 A. L. R. 198, et seq. Our present ruling brings this jurisdiction from a position of almost complete isolation on this subject to one of accord with the overwhelming weight of authority. The case of Hunter v. Big Four Auto Company, *supra,* in so far as it conflicts with the rule laid down in this opinion, and all the cases which follow that principle of the Hunter case, are hereby overruled.

Whole court sitting.