Kurry *v.* Frost.

4-6747                                  162 S. W. 2d 48

Opinion delivered May 25, 1942.

*Hardin & Barton,* for appellant.

*Chas. I. Evans* and *Paul X. Williams,* for appellee.

SMITH, J. On September 24, 1932, appellee was run down by a hit-and-run driver of an automobile in the town of Paris, and was severely injured. The car which ran him down was a B model, wine colored, Ford car, exactly like one owned by Steve Kurry who lived over a hill north of the place of injury and in the same direction the car proceeded after striking the victim. The driver evidently lost control of the car, as it ran into a wire fence which it struck with its right fender. Shortly after the collision a witness saw Kurry's car in his garage with its lights on. Within a half an hour after the collision, investigating officers found the Kurry car in its garage with the lights turned off. The right headlight was broken, and the right fender had such scratches on it as a wire would have made and presented the appearance of having been very recently done.

Appellee brought suit against Mr. Kurry to compensate his injury. The case remained on the docket until January, 1941, when it was tried, and the trial resulted in a verdict for the defendant. The testimony in that case, like the testimony in the instant case, disclosed very convincingly that Mr. Kurry was not the driver of the car, but it did disclose, in appellee's opinion, that Mrs. Kurry was the driver, and, after obtaining this information, disclosed at the trial, suit was brought against Mrs.

Kurry, and a judgment for $1,500 was rendered against her, from which is this appeal.

Appellee did not know prior to this first trial that Mrs. Kurry, and not her husband, was the driver who ran him down. Mrs. Kurry was driving alone on some mission not disclosed, and her husband was, therefore, not responsible for the tort committed in striking appellee. *Brotherton v. Walden, ante,* p. 92, 161 S. W. 2d 391.

Appellee was struck about 9 p. m. Mrs. Kurry denied having driven the car that night, and the testimony on her behalf, if credited, shows very clearly that she did not drive the car. The jury could not have found for appellee if this testimony had been accepted as true, and it must be presumed that it was not believed. The credibility of the witnesses who gave this testimony was, of course, a question for the jury.

The testimony of Mrs. Kurry and that of two of her children is to the effect that Mrs. Kurry did not leave her home that night, and the testimony of Luther Adams, if true, very conclusively shows that Mrs. Kurry did not do so. Adams called at the Kurry home between 8 and 8:30 p. m., and remained there about an hour. It was during this time that appellee was struck. Adams did not, during that time, leave the room, but Mrs. Kurry did leave the room and did not return while witness was there. According to this witness, Mrs. Kurry went into a bedroom to attend a sick child. The testimony of this witness is much discredited by the stenographic report of his testimony at the first trial, where he testified as follows: "Q. Did any of them leave while you were there? A. Mrs. Kurry left while I was there. Q. Are you sure about that? A. Yes, sir. Q. Did anyone go with her? A. No, sir. Q. Did she come back while you were there? A. No, sir. Q. She didn't come back while you were there? A. No, sir."

This witness was corroborated by one George Kidwell, who testified that he accompanied Adams to the Kurry home, but remained in the car during the entire period of Adams' visit, and that during that time no one left the house, and no car was driven out of or into the

garage. But, as we have said, the jury has passed upon the credibility of these witnesses.

The jury might well have found that Mrs. Kurry did not drive the car; but, we are unable to say that the finding of the jury to the contrary is not supported by substantial testimony.

It is argued that, even though the testimony sufficiently shows that appellee was struck by the Kurry car, it is purely speculative whether Mrs. Kurry was the driver. But it is not entirely so. Certainly, it is more speculative that it was driven by some other person. The car was in the garage immediately after the collision, with its lights burning, and these had been turned off when the officers came about half an hour later. It was not shown that Mrs. Kurry left the home; but it was shown that she left the room where Adams was being entertained by her husband, and that she did not return to the room. In the last analysis, the responsibility of passing upon this question of fact rested upon the jury; and we are unwilling to say that the verdict was without substantial testimony upon which to base it.

The court gave, over the objection and exception of appellant, an instruction on circumstantial evidence, of which appellant says it "might not be an erroneous abstract statement of law, but it is clearly abstract. It does not undertake to apply the evidence in this case."

The instruction was not abstract, as appellee's case depended upon proof of circumstances to support the inference and finding that appellant was the driver of the car, and it was the function of the jury to weigh and apply the testimony.

Other instructions were objected to, chiefly upon the ground that they were abstract and not warranted by the testimony in the case. We think they were not abstract and were correct declarations of the law upon the question of liability, if it were found that appellant was the driver of the car.

It is very earnestly insisted that the cause of action, which occurred about nine years before the suit was filed,

was barred by the statute of limitations, and that defense was interposed. Upon that issue the court gave an instruction, numbered 2, reading as follows: ''Section 8952 of Pope's Digest of the statutes of Arkansas reads as follows: 'Absconding Debtor. If any person by leaving the county, absconding or concealing himself, or any other improper act of his own, prevent the commencement of action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so prevented.' If you find from a preponderance of the evidence that by reason of any improper act of the defendant the commencement of the action was prevented within three years of the time of receipt of his injuries, then plaintiff would have three years after discovering that defendant was responsible for his injuries, if you so find, within which to file his suit. So, if he first learned of this fact, if it is a fact, in January, 1941, he is not barred.''

The instruction quotes the statute, and the first question which presents itself is whether the cause of action was an ''action in this act specified.''

This section is found in all the digests of our statutes, and is correctly stated to have been taken from Chapter 91 of the Revised Statutes, entitled ''Limitations.'' It first appears in ''Laws of Arkansas Territory, compiled and arranged by J. Steele and J. M'Campbell, Esqs.,'' published in 1835. It there appears as § 5 of the chapter on Limitation of Actions, and as having been taken from an act passed July 4, 1807, by Louisiana Territory. The actions to which the act referred are enumerated in § 1 of this Territorial Act, which reads: ''In all actions upon the case other than for slander; . . .,'' following which other causes of action are enumerated. This § 5, with some mutations which do not destroy its identity or change its effect, appears as § 26 of Chapter 91 of the Revised Statutes.

Now, Mrs. Kurry denies striking appellee. If she did strike him—and the verdict of the jury is conclusive of that fact, then she has concealed that fact, and even yet attempts to do so.

By § 17 of act 134 of the Acts of 1911, now appearing as § 6645, Pope's Digest, which was passed soon after automobiles came into general use, it was required that Mrs. Kurry should stop and, upon request of the person injured, give him her name and address. This she did not do, and she offered him no aid, and made no report of the incident. It was highly improper, indeed, inhumane, to omit the performance of these duties, if no law had imposed them.

At § 231 of the chapter on Limitation of Actions, 34 Am. Jur., p. 187, under the sub-title, "Concealment of Cause of Action," it is said, in part: "According to the majority rule, however, fraudulent concealment of a cause of action from the one in whom it resides, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should, with reasonable diligence, have been discovered. Stated in another way, the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another, by actual fraudulent concealment prevents such other from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run from the time the right of action is discovered or, by the exercise of ordinary diligence, might have been discovered."

The case of *Conditt* v. *Holden,* 92 Ark. 618, 123 S. W. 765, 135 Am. St. Rep. 206, was an action to recover a mule, of which the defendant had had possession for more than three years when the suit was brought, and the three-year statute of limitations against suits in replevin was pleaded in bar of the action. The defendant had taken up

the mule as an estray animal, but had not posted it as such, as the law required him to do. The plea of the statute of limitations was sustained by the trial judge, and in reversing that action it was said, after quoting § 5088, Kirby's Digest (now appearing as § 8952, Pope's Digest), that "The defendants did not attempt to comply with the statute, but on the contrary they wrongfully and unlawfully claimed the mule as their own, and kept it on and about their farm for over four years, until the true owner claimed it. This conduct not only rendered them guilty of a criminal offense, but it was a fraud on the plaintiff's rights which amounted to a fraudulent concealment from plaintiff of his right of action against them for the recovery of his property. Under these circumstances they cannot invoke the benefit of the statute of limitation, which began to run against plaintiff only from the time of his discovery of the fraud."

The case of *Free* v. *Jordan,* 178 Ark. 168, 10 S. W. 2d 19, was another replevin suit for an animal, which reaffirmed the holding in the Conditt case.

Here, Mrs. Kurry did not stop, as the law and the dictates of humanity required, but drove on, leaving appellee to his fate. Had she stopped it would have been known who had struck appellee, but in driving away, in violation of the law, she concealed her identity, and appellee remained unaware of his cause of action against her until the trial of the suit against her husband.

Apart from this statute (§ 8952, Pope's Digest) many cases hold, as does the case of *Wright* v. *Lake,* 178 Ark. 1184, 13 S. W. 2d 826, that, where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the fraud is discovered. The most recent of these cases is that of *Quattlebaum* v. *Busbea, ante,* p. 96. 162 S. W. 2d 44, where it was held that "While fraudulent execution of illegal warrants remained undisclosed, with concealment of transactions by which money was withdrawn from treasury, statute of limitation did not begin to run."

Mrs. Kurry did not conceal herself. She concealed her act. She continued to reside in Paris, where the in-

jury was inflicted, but she has never yet, and does not now, admit striking appellee, and we think a question was made for and properly submitted to the jury whether she had, by "any other improper act of her own," concealed from appellee his cause of action against her.

The case must, therefore, be affirmed, and it is so ordered.

Mr. Justice Mehaffy is of opinion that the cause of action is barred by the statute of limitations.