LOWE *v.* IVY.

4-6793                    164 S. W. 2d 429

Opinion delivered June 29, 1942.

*Beaumont & Beaumont* and *J. A. Watkins,* for appellant.

*Donham, Fulk & Mehaffy,* for appellee.

McHANEY, J.   At about 9:45 a. m. on Sunday, July 28, 1940, appellant, Richard Lowe, a lad six years of age at that time was struck and severely injured ·by an automobile driven west on West Third street by appellee, Mrs. W. P. Ivy, near the intersection of West Third street and Gaines street in the city of Little Rock. Through his mother as next friend, he brought this ac-

tion against appellees to recover damages therefor. Trial resulted in an instructed verdict and judgment for appellees and this appeal followed to reverse said judgment.

While the amended complaint alleged that Mrs. Ivy was driving the car as the "servant, agent and employee and under the direction of her husband, W. P. Ivy," the answer denied the truth of this allegation, as well as all other material allegations, and the proof wholly failed to establish it, being silent in this regard; so, the instructed verdict as to W. P. Ivy must be sustained. It was not shown whose car it was and he was not in the car at the time. *Brotherton* v. *Walden, ante,* p. 92, 161 S. W. 2d 391; *Kurry* v. *Frost, ante,* p. 386, 162 S. W. 2d 48.

We agree with the trial court that the evidence fails to disclose any act of negligence on the part of Mrs. Ivy. The undisputed facts, coming from appellant's witnesses, are to the following effect: Richard Lowe, a little six-year-old boy, was living with his parents in the Beaumont home, at 700 West Third street, which is on the northwest corner of said streets. The house faces south on West Third street and is some 15 feet or more from the door to the north curb line of West Third street. Just what distance the east side of the house is from the west curb line of Gaines is not shown, but the fact is it is some substantial distance west of the sidewalk running north and south on the west side of Gaines. The little boy had started to Sunday school in the Second Presbyterian Church on the southeast corner of said streets. Witness Henthorn, living in the Beaumont home, seems to have observed very closely the boy's movements from the time he ran out of the front door of the home until he was struck by the car. According to this witness the little boy ran out of the front door and continued to run out into the street some distance west of the intersection, ran in front of a panel truck going west on West Third and would have been struck by it had the driver not slackened his speed, and then in front of appellees' car which was in the act of passing the truck, with a distance of about four feet between them; the front

end of the car had not reached or passed the front end of the truck, but was about four feet behind it. He said neither the car nor the truck was traveling very fast; that he supposes they were going at a reasonable speed; that the boy started to cross West Third street about 30 feet west of the intersection; that when the car hit him, "She knocked him a piece, I would say a little ways"; that appellees' car started around the truck in the intersection, at which time the truck was about even with the sidewalk, evidently referring to the sidewalk on the west side of Gaines. Another witness, living at 710 West Third street, and sitting on his front porch, did not see the accident, but heard the noise of brakes on the car, or the tires slide, turned around and the truck obstructed his view. The boy was under the front of the car and was six or eight feet from the south curb. This witness placed the child 40 or 50 feet from the edge of the curb on Gaines, referring to the west curb on Gaines and 10 or 12 feet west of an imaginary line running south from the front of the Beaumont home, or that many feet west of the walkway leading from said home to the sidewalk. Another witness' statement was admitted by agreement, but it added nothing to the testimony of the others.

We think this evidence wholly fails to show negligence on the part of Mrs. Ivy. There is no evidence of speeding or failure to keep a lookout, no evidence that she saw the little boy until he darted past the truck and into her line of vision immediately in front of her at a time and place she could not stop before striking him and no evidence that she did not apply her brakes and stop her car as quickly as possible after discovering his peril. The complaint alleged that Mrs. Ivy "was driving at a fast and at a reckless rate of speed and driving south of the middle of West Third attempting to pass said car, while driving at a rate of speed estimated at approximately 25 to 30 miles per hour." Another allegation is that she struck the boy "while recklessly overtaking and attempting to pass the car, and negligently driving her car in the south lane of said West Third street." Also, that she was negligent in not observing the boy and in not slowing the speed of her car, "and negligent in strik-

ing Richard Lowe with the left bumper,'' etc. There is no evidence that she was driving 25 or 30 miles per hour, or that she was driving fast or recklessly. There is evidence that she drove south of the middle of West Third street, but that was not negligence, if there was no oncoming car in her way, and there was none. It is not *per se* negligence to overtake and pass another car. Counsel for appellant argue that she attempted to pass in an intersection in violation of a city ordinance, and in violation of § 6718, Pope's Digest. The complaint made no such allegation. No such ordinance was introduced in evidence, or if so, it is not abstracted, and courts do not ordinarily take judicial notice of municipal ordinances. *City of Malvern* v. *Cooper*, 108 Ark. 24, 156 S. W. 845. The cited statute does prohibit a vehicle from being ''driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless said left side is clearly visible and is free from oncoming traffic for a sufficient distance,'' etc. Nor shall it be driven to the left side of the roadway ''when approaching within 100 feet of or traversing any intersection or railroad grade crossing.'' Assuming without deciding that this statute applies to street crossings, the evidence fails to show a violation of it here. At the most its violation would be only evidence of negligence. The undisputed proof shows that when Mrs. Ivy started to pass the truck it was leaving the intersection and was about even with the west curb of Gaines. She never did pass it entirely as the front end of her car was about four feet behind the front end of the truck when the child was hit, some 30 to 50 feet west of the intersection.

Therefore, when we view the evidence in its most favorable light to appellant, together with all reasonable inferences deducible therefrom, as we are required to do in determining whether an instructed verdict was correctly given, we cannot say there was any substantial evidence of negligence to be submitted to the jury. It appears that this unfortunate incident was an unavoidable accident for which said appellee is in no way to blame. In *Morel* v. *Lee*, 182 Ark. 985, 33 S. W. 2d 1110,

the late Justice KIRBY quoted with approval from 1 Blashfield Cyclopedia of Automobile Law, p. 641, § 8, to the effect that owners and drivers of motor vehicles are not insurers against all accidents, which applies to injuries to children, and further: "If no one can reasonably foresee the sudden presence of a child in the path of an automobile, so as to prevent a collision with him, the driver or his master, proceeding at a lawful speed and being otherwise in observance of traffic regulations, will not be liable for injuries for such a collision." There is in this case no showing that appellee was driving at an unlawful speed, nor that she was violating any traffic regulation. There is no showing that she saw or, by the exercise of ordinary care, could have seen the child as it ran out of the house and into the street, as the truck was between her and the child and, presumably, blocked her view.

There being no substantial evidence of negligence, which is never presumed from the accident and injury, the court properly instructed a verdict for appellees, and the judgment rendered thereon must be affirmed.

MEHAFFY, J., not participating.