**SECOND NATIONAL BANK & TRUST COMPANY, as Ancillary Administrator, etc., et al., Appellants,**

v.

**FIRST SECURITY NATIONAL BANK & TRUST COMPANY, as Executor, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 12, 1965.

Rehearing Denied Feb. 4, 1966.

Rufus Lisle, Harbison, Kessinger, Lisle & Bush, Lexington, Roger B. Hendrix, Charlotte, N. C., for appellants.

Stoll, Keenon & Park, Miller, Griffin & Marks, Lexington, F. Thomas Miller, Jr., Charlotte, N. C., for appellees.

MILLIKEN, Judge.

This appeal involves the application of the ten-year statute of limitations to the probate of a will.

Wilson B. Dalton and the late Joe N. Dalton, appellants in this action, sought to probate the last will and testament of their sister, Margaret Dalton Kirk. The probate was opposed by the testatrix' only issue, appellee Louise Kirk Headley (now Edwards), and by the First Security National Bank & Trust Company, personal representative of the testatrix' husband, T. H. Kirk. The trial court entered judgment for defendants (appellees) and plaintiffs (appellants) appealed.

The testatrix, Margaret Dalton Kirk, wife of T. H. Kirk, died on August 11, 1948, leaving an estate valued at that time at approximately $900,000, including 7,280 shares of common stock of R. J. Reynolds Tobacco Company. At the time of her death she was a resident of Lexington, Kentucky, and left as survivors her husband T. H. Kirk, a daughter, Mrs. Louise Kirk Headley, a resident of Florida, and her two brothers, Wilson B. Dalton and Joe N. Dalton, who resided in North Carolina.

On August 23, 1948, T. H. Kirk was appointed and qualified as administrator of his wife's estate, making affidavit that she died intestate. He administered the estate and late in 1952 filed a settlement dividing it between himself and their daughter, Mrs. Headley, according to the statutes of descent and distribution.

Mr. Kirk died in September, 1960, and in October, 1960, Louise Kirk Headley, while going through all the effects preparatory to closing the Lexington home, discovered her mother's holographic will dated January 3, 1932, in her mother's desk in a downstairs room. In this will Mrs. Kirk bequeathed 1,000 shares of common stock of the R. J. Reynolds Tobacco Company to each of her brothers, Joe N. Dalton and Wilson Dalton. The balance of the estate was bequeathed to her daughter. After the death of her

mother the daughter had searched the downstairs desk and found no will there. She had also conducted a partial search of an upstairs desk and found no will. It could not be determined whether Mr. Kirk personally searched for the will, for it was not discovered until after his death.

After Mrs. Headley found the will she called the trust officer of the First Security National Bank & Trust Company, executor of her father's will, to relate her discovery. Upon advice of counsel, he had her inform both Wilson and Joe Dalton, who later filed the present action to probate the will.

■ KRS 413.160 states:

"An action for relief, not provided for by statute, can only be commenced within ten years after the cause of action accrued."

This statute has been interpreted to include probate proceedings, hence a proceeding to probate a will ordinarily is barred by the lapse of ten years from the time the right to probate accrued. Allen v. Froman (1894), 96 Ky. 313, 28 S.W. 497; Allen v. Lovell's Adm'x (1946), 303 Ky. 238, 197 S.W.2d 424; Hoagland v. Fish (1951), Ky., 238 S.W.2d 133.

It naturally is the contention of the proponents of the will that the limitation should be tolled because, they claimed, there was a concealment of the will or at least an obstruction to its probate. They assert that Mr. Kirk had the duty to search for the will and to disclose it, and they base this assertion on the premise that Mr. Kirk, as the administrator of his wife's estate, had actual or constructive possession or custody of the instrument as well as custody of her other personal property. There is a semblance of truth in the contention, but the sense of it seems to be that Mr. Kirk had the duty to disclose a will only if he knew one existed and where to find it, and that that duty would not arise from the fact alone that he was administrator of the estate, but from the fact that he had actual

knowledge and was also an interested party. In other words, such a duty would arise primarily from his knowledge, not from his office as administrator alone.

What evidence is there that he had knowledge of the will? There is none. His daughter testified that she found no will in the desk or any place else in the search she made shortly after her mother's death and that her father knew of the futile results of her search. It was only after her father's death that she found the holographic will of her mother in the desk. How it got there and who put it there are unanswered questions. Had there been any motive to conceal the will its destruction would have been the surest way to do it, since, as far this record discloses, all the parties believed that Mrs. Kirk died intestate until her 1932 holographic will was discovered in October, 1960, among her papers, and not among the papers of Mr. Kirk.

■ We cannot assume active, fraudulent conduct on the basis of the evidence offered here for, if anything, it seems to us that all of the circumstances are consonant with a finding of no fraud and no intentional concealment or obstruction, and no active effort to mislead, such as would toll the running of the statute of limitations under KRS 413.190(2); Security Trust Company v. Wilson, 307 Ky. 152, 210 S.W.2d 336. In fact, Mr. Kirk's sister moved into the home shortly after Mrs. Kirk's death and used the bedroom where the upstairs desk was located until Mr. Kirk's death twelve years later. It is conjectural, of course, but it is possible that the sister is the one who removed the will with other papers from the upstairs desk to the one downstairs, so that she herself might have full use of the desk in her bedroom. Furthermore, Mr. Gayle Mohney and his wife testified that Mrs. Kirk told them, in the presence of Mr. Kirk on Sunday before Mrs. Kirk's death, that she had no will and that she wanted to see Mr. Mohney about

making one. This evidence was admissible for the purpose of showing that Mr. Kirk was justified in believing that his wife died intestate; it was not hearsay as contended by the appellants, for the issue was not the truth of the statement that she had no will but, rather, that she made the statement and the statement led Mr. Kirk to assume that she had no will. Mr. Mohney had known the Kirks for many years, had represented Mr. Kirk, but had never acted as counsel for Mrs. Kirk, so no violation of professional privilege is involved.

The appellants contend that they were entitled to a jury trial or at least to take further testimony, citing KRS 394.260, which directs the impaneling of a jury on demand to determine whether any testamentary paper is or is not the will of the testatrix. The issue here was not whether the instrument was the will of Mrs. Kirk, but whether its probate was barred by the ten-year statute of limitations. Probate proceedings are ecclesiastical and equitable in origin, 57 Am.Jur., Wills, Sec. 744, pages 510, 511, and involve no jury unless a statute directs it. Howard v. Howard (1960), Ky., 333 S.W.2d 953, citing authorities. We conclude that the chancellor was justified in refusing to call a jury in this case wher the statute of limitations was the controlling issue.

The appellants moved the chancellor "to place this case on the jury docket and assign it for trial," and the appellees countered with a motion to submit the case to the court "for final judgment on the pleadings and proof herein." Pursuant to an agreement of the parties the trial court had theretofore ordered that the record in the probate court "may be considered by the court on any motions for summary judgment or judgment on any of the pleadings and said documents may be used in the trial of this action subject to the right to object to any of them * * *." The chan-

cellor overruled the appellants' motion and submitted the case for judgment on the probate court record "without the necessity of the production of the witness orally in open court," and judgment was rendered on that basis.

The appellants contend that the chancellor, instead of trying the case de novo as required by CR 72.03, acted as a reviewing court and, in effect, granted the appellees a summary judgment under the guise of "Findings of Fact and Conclusions of Law," thus allegedly depriving the appellants of an adequate hearing. In reply, the appellees point to the agreed order authorizing consideration of the probate court record "in the trial of this action," and they further declare that the appellants offered no other evidence. In view of the fact that the appellants' motion "to place this case on the jury docket and assign it for trial" was a demand for a jury trial and was properly denied, and there does not appear from the record any indication that the appellants proposed to offer any other proof, we conclude that the chancellor was justified in submitting the case on the record before him.

As we view this case there appears to be nothing of an affirmative character which was intended to deceive or mislead, or prevent inquiry, as would toll the statute of limitations. 34 Am.Jur., Limitation of Actions, Sec. 234, pages 191, 192; Towels v. Campbell, 204 Ky. 591, 264 S.W. 1107, 50 A.L.R. 175. Whether Mrs. Kirk died testate or intestate it would have made little difference to Mr. Kirk in the interest in her property he could have received, for he could have renounced any will she made. And we agree with the chancellor that Mrs. Headley was guilty of no impropriety actually or impliedly. We conclude that probate of the will was barred by limitations.

The judgment is affirmed.