Phillip J. MUNDAY and his wife,
Francis J. Munday,
Appellants,

v.

MAYFAIR DIAGNOSTIC LABO-
RATORY and Thomas J. Meyer, as
Trustee under the James M. Callis
Trust and Representative of the part-
ners doing business as Mayfair Diag-
nostic Laboratory, in the City of Ow-
ensboro, Daviess County, Kentucky,
Appellees.

No. 91–SC–455–DG.

Supreme Court of Kentucky.

May 14, 1992.

Paul E. Bugay, Owensboro, Joseph A.
Yocum, Evansville, Ind., for appellants.

Ronald M. Sullivan, Holbrook, Wible, Sul-
livan & Mountjoy, P.S.C., Owensboro, for
appellees.

LAMBERT, Justice.

The issue presented is whether the fail-
ure of partners doing business under an
assumed name to comply with KRS 365.-
015, an act which requires the filing of a
certificate of assumed name, tolls the stat-
ute of limitations for tort actions against
them. In *Hayes v. Providence Citizens'
Bank & Trust Co.,* 218 Ky. 128, 290 S.W.
1028 (1927), this Court held that the pur-
pose of the assumed name statute was
protection of the public from fraud and
deceit by requiring disclosure of the identi-

ties of persons doing business under an assumed name; that the statutory provision which imposes a modest fine and term of incarceration was the exclusive punishment for violation; and that an additional penalty in the form of a forfeiture of goods and property could not be imposed. *Hayes* also held that the statute could not be used as an instrument to defraud one who had failed to comply with it. Here, we must determine whether the purpose of the assumed name statute is of sufficient breadth to require a ruling that one found to be in violation should be denied benefit of an otherwise applicable statute of limitation.

A few days prior to the expiration of one year from the date of discovery, appellants brought a civil action for medical negligence against Mayfair Diagnostic Laboratory and Dr. James H. Callis. Prior to bringing suit, appellants had consulted the records in the office of the Secretary of State and in the office of the Daviess County Court Clerk to determine whether Mayfair was a corporation, or a partnership or proprietorship doing business under an assumed name. The records so consulted failed to reveal any filing by Mayfair. It is undisputed that during the relevant time period, Mayfair Diagnostic Laboratory was a partnership and that the partners had failed to comply with KRS 365.015.

After commencement of their action, appellants learned through discovery that Mayfair was a general partnership consisting of various individuals and family trusts doing business as Mayfair Diagnostic Laboratory. Significantly, discovery also revealed that Dr. Callis was not a partner, his interest having been transferred to a family trust several years earlier, and that his only role was as medical director of Mayfair. Appellants amended their complaint and properly joined at least one Mayfair partner, but by this time, approximately sixteen months had passed since the cause of action was discovered and appellants' individual claims were held to be time barred. An order of dismissal was entered.

On appeal to the Court of Appeals, the judgment of the trial court was reversed. The Court of Appeals held that a partner-

ship could be sued in its firm name and concluded that since the action was timely filed against Mayfair Diagnostic Laboratory, the trial court erred in dismissal of the action. Mayfair then sought and was granted discretionary review in this Court whereupon we remanded the case to the Court of Appeals for reconsideration in light of our decision in *Telamarketing Communications, Inc. v. Liberty Partners*, Ky., 798 S.W.2d 462 (1990), which held that a partnership could not sue under an assumed partnership name. In response, and on authority of *Telamarketing*, the Court of Appeals reversed its earlier decision and held the action to be barred by KRS 413.140. Appellants then sought and were granted discretionary review in this Court.

For its order of dismissal, the trial court relied on CR 15.03, a rule which governs the relation back of amendments to pleadings and our recent decision in *Nolph v. Scott*, Ky., 725 S.W.2d 860 (1987). The trial court held that the amended complaint which named at least one Mayfair partner did not relate back to the date of the original complaint since Mayfair was not an entity subject to suit and Dr. Callis, the only individual named as a defendant, was not a partner. The trial court did not reach the other arguments advanced by appellants. On appeal, the Court of Appeals originally decided the case on the view that a partnership could be sued in the partnership name, but reversed itself on remand. The Court of Appeals noted, however, that appellants had reiterated the failure of the partnership to comply with the assumed name statute.

It is unnecessary to engage in a review of our decisions in *Nolph v. Scott, supra*, and *Telamarketing v. Liberty Partners, supra*, for the issue here is whether appellants' amended complaint, which is conceded to have named at least one Mayfair partner, was timely by virtue of the failure of the partners in Mayfair to comply with the assumed name statute. Said otherwise, are the Mayfair partners entitled to benefit of KRS 413.140, the applicable statute of limitations, despite their failure to comply with a statute which is designed to

inform the public of the identities of persons doing business under an assumed name?

The Kentucky General Assembly and this Court have long recognized the value of statutes which "bar stale claims arising out of transactions or occurrences which took place in the distant past." *Armstrong v. Logsdon*, Ky., 469 S.W.2d 342, 343 (1971). We have upheld the constitutionality of statutes of limitations despite their arguable conflict with Sections 14, 54, and 241 of the Kentucky Constitution. "The Legislature's power to enact statutes of limitations governing the time in which a cause of action must be asserted by suit is, of course, unquestioned." *Saylor v. Hall*, Ky., 497 S.W.2d 218, 224 (1973). And we have held that provisions of statutes of limitations should not be lightly evaded. *Fannin v. Lewis*, Ky., 254 S.W.2d 479, 481 (1952).

■ While the foregoing and numerous other decisions demonstrate a firm commitment to enforcement of statutes of limitations, there are exceptions to the rule. Parties are at liberty to contract for a limitation period less than the period fixed by statute. *Johnson v. Calvert Fire Ins. Co.*, 298 Ky. 669, 183 S.W.2d 941 (1945). Likewise, after a cause of action has accrued, parties may, by agreement, extend the time for filing the action beyond the time in which the limitation would otherwise run. *Bankokentucky Co.'s Receiver v. National Bank of Kentucky's Receiver*, 281 Ky. 784, 137 S.W.2d 357, 369 (1939). An estoppel may arise to prevent a party from relying on a statute of limitation by virtue of a false representation or fraudulent concealment. *Cuppy v. General Accident Fire and Life Assurance Corp.*, Ky., 378 S.W.2d 629 (1964). And for persons under a legal disability, the running of the statute of limitations ordinarily does not commence until the disability is removed. *Gunnels v. Stanley*, 296 Ky. 662, 178 S.W.2d 195 (1944). Finally, we have held that as statutes of limitations are in derogation of presumptively valid claims, when doubt exists as to which statute should prevail, the longer period should be applied. *Troxell v. Trammell*, Ky., 730 S.W.2d 525 (1987).

A claim of equitable estoppel is widely utilized by parties who seek to avoid a statute of limitation defense. Long ago a tolling statute was enacted which provides that a resident of this State who absconds or conceals himself "or by any other indirect means obstructs the prosecution of the action" shall not have benefit of the statute of limitation so long as the obstruction continues. KRS 413.190(2). We have held that this tolling statute is simply a recognition in law of an equitable estoppel or estoppel *in pais* to prevent fraudulent or inequitable application of a statute of limitation. *Adams v. Ison*, Ky., 249 S.W.2d 791 (1952). Our decisions construing the statute and applying equitable estoppel appear to require "some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Id.* at 792. In *Second National Bank and Trust Co. v. First Security National Bank and Trust Co.*, Ky., 398 S.W.2d 50 (1966), we held that fraudulent conduct or concealment could not be assumed in the absence of evidence to support it.

Ordinarily, proof of fraud requires a showing of an affirmative act by the party charged. An exception to this general rule may be found in a party's silence when the law imposes a duty to speak or disclose. Such was the case in *Security Trust Co. v. Wilson*, 307 Ky. 152, 210 S.W.2d 336 (1948), in which it was alleged that a deceased uncle who had served as fiduciary for his niece had converted her property to his own use. The Court emphasized the language in KRS 413.190 "by any other indirect means" and stated:

"The indirect means employed by the uncle in the case at Bar, if it existed, was a failure to speak and advise his niece that he had exchanged her bonds for other bonds and taken the title in his own name." *Id.* at 339.

The Court relied on *Kurry v. Frost*, 204 Ark. 386, 162 S.W.2d 48 (1942), which held that a party who, in violation of the law, left the scene of an automobile accident

after striking another person, "concealed her identity." The Court in *Wilson* held that the law imposed upon the uncle a duty of disclosure to his niece as follows:

"that this fiduciary relationship was such that there was a duty upon the part of the said Curtis to advise the said plaintiff that he had exchanged her bonds and taken the title to the ones exchanged for in his own name; that this concealment constituted a means of obstruction within the meaning of KRS 413.190, and that this concealment tolled the running of the statute of limitations." *Security Trust Co.*, 210 S.W.2d at 339–40.

■ From the foregoing, it may be concluded that while concealment ordinarily requires an affirmative act, where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct.

■ Returning to the case at bar, we reiterate that the purpose of the assumed name statute is to inform members of the public, including appellants, of the identity of persons doing business under an assumed name. It could not be disputed that for lawful use, including litigation, the statute imposes a duty to provide such information. Thus, appellees' conduct amounted to a violation of a statute designed to provide appellants information which was essential to the commencement of litigation. We have no doubt that such conduct may be properly regarded as obstruction by indirect means within the purview of KRS 413.190(2).

Appellees rely in part on a decision of the appellate court of Illinois, *Gulley v. Fountalas*, 153 Ill.App.3d 100, 106 Ill.Dec. 385, 505 N.E.2d 1176 (1987), which held that failure of a party to comply with the assumed name act is not an exception to the applicable statute of limitation. The court noted, however, that by the terms of the act, in such circumstance, a civil action could be brought against the business under its assumed name and "unknown owners" and permitted judgment and execution against the assets of the business. Unlike its Kentucky counterpart, the Illinois stat-

ute provides for a remedy in the event of the failure of business owners to comply with the statute. This provision would appear to recognize the plight of persons desiring to bring litigation against an unidentified business entity and provide an exception to the otherwise applicable rule.

We have not overlooked the language in *Hayes v. Providence, supra,* which states that the statutory penalty for violation of KRS 365.015 is exclusive. We note, however, that the depositor's failure to comply with the assumed name statute was urged as grounds for denying him recovery of his money, and the Court held that the statute could not be used as an instrument of fraud to permit one to refuse to return the property of another solely because of his failure to file the certificate. To prevent an awful injustice, the Court held the only sanction to which the depositor should be subjected was the statutory punishment. In *Hayes* there was neither benefit nor harm to either party by virtue of the failure to file the certificate. In this case, however, appellees' failure to file the certificate denied appellants information which was essential to the commencement of litigation. If appellees' plea of limitation is successful, they will have succeeded in benefitting from their violation of the law and appellants' claim for damages will be extinguished. In view of its denunciation of a circumstance in which one could be defrauded by his failure to comply with the statute, the Court in *Hayes* could not have intended that one in violation of the statute use it as an instrument of fraud and profit to the detriment of another. We conclude, therefore, that *Hayes v. Providence, supra,* need not be overruled as in its totality, there is no inconsistency with our decision here.

In summary, we are of the opinion that appellees' failure to comply with KRS 365.015 was sufficient to create an estoppel under KRS 413.190(2), thereby tolling the statute of limitation during the period of noncompliance. The opinion of the Court of Appeals is reversed and this cause remanded to the Daviess Circuit Court for

further proceedings not inconsistent herewith.

STEPHENS, C.J., and COMBS, LEIBSON, SPAIN and WINTERSHEIMER, concur.

LEIBSON, J., files a separate concurring opinion in which COMBS, J., joins.

REYNOLDS, J., dissents by separate opinion.

LEIBSON, Justice, concurring.

I concur in the Majority Opinion as written. There is, however, another reason here, equally valid, why the statute of limitations does not protect the partners in the Mayfair Diagnostic Laboratory against liability.

That reason is because service of summons on the Amended Complaint relates back to the date of the initial Complaint under the principle of "Relation Back of Amendments" stated in CR 15.03, which states as follows:

"(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

The "condition of paragraph (1)" is satisfied when "the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." CR 15.03(1). This covers the present situation. Further, the fact that "the part[ies] to be brought in by amendment ... ha[ve] received such notice of the institution of the action that [they] will not be prejudiced in maintaining [their] defense on the merits" (CR 15.03(2)) is not in controversy.

What is in controversy is the remaining requirement in CR 15.03(2) that "within the period provided by law for commencing the action against [them], the part[ies] to be brought in by amendment ... knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [them]." But, this condition has also been met beyond any argument to the contrary except for one that uses a superliteral, hypertechnical construction of the phrase: "within the period provided by law for commencing the action against him, the party ... has received ... notice of the institution of the action."

I recognize that our Court used just such hypertechnical interpretation of this phrase in *Nolph v. Scott*, Ky., 725 S.W.2d 860 (1987), with two Justices dissenting, and that in doing so we followed the lead of the United States Supreme Court in *Schiavone v. Fortune a/k/a Times, Inc.*, 477 U.S. 21, 106 S.Ct. 2379, 90 L.Ed.2d 18 (1986). But the United States Supreme Court seems bent on destruction on long-standing, fundamental rules of construction that apply to construing the rules of civil procedure in an all-out effort to limit the size of the federal docket, and, this is hardly a persuasive reason for our Court to follow a similar course in Kentucky cases. We have recently firmly rejected just such a response as inappropriate in similar circumstances in *Steelvest, Inc. v. Scansteel Service Ctr.*, Ky., 807 S.W.2d 476 (1991), refusing to follow the lead of the United States Supreme Court in amending the summary judgment rule by judicial fiat to accommodate docket control. We should do the same thing here.

The hypertechnical construction to which I refer is interpreting the phrase, "within the period provided by law for commencing the action against him," as meaning the party must have actual notice that suit has been filed by the last day of the time period stated in the statute of limitations. This ignores the fact that an action is commenced under *CR 3* when suit is filed and summons is issued in good faith, regardless of the subsequent date of service. The phrase "commencing the action" in CR 15.-

03(2) refers, *not* just to the statute of limitations period, but, *under CR 3,* once the Complaint is filed within the period of limitations, and summons issued in good faith, includes also the period reasonably necessary to effect delivery of the summons.

Under the facts of this case, when Dr. James H. Callis, the Director of the Mayfair Diagnostic Laboratory, was served on June 4, 1986, *he* had notice of the action, and all of the partners in the Mayfair Diagnostic Laboratory *also* had notice of the filing of this action. The Complaint is served with the summons. Further, the record includes correspondence between appellants' attorneys, the Mayfair Diagnostic Laboratory and Dr. Callis, as well as Dr. Edwin A. Hanekamp who was an unknown partner in this Laboratory and also delivered Francis Munday's baby, overwhelming proof that the parties sued had notice of this claim from and after September 12, 1985, long before the statute of limitations was an issue. It would be grossly unjust in cases such as this to permit parties fully knowledgeable about the claim against them to stonewall the efforts to discuss settlement of the matter out of court, stand silent on the true nature of the legal entities involved, and then hide behind the statute of limitations. This is not an approach we should encourage by overreading CR 15.03(2).

In my dissent in *Nolph v. Scott, supra,* I refer to three well-reasoned United States Circuit Court "decisions with fact situations more in point than the *Schiavone* case," which we should follow in applying the "community of interests" test to decide an issue of relation back in cases such as this, commenting:

"*All* of the above authorities would apply the rule of relation back of amendments provided in CR 15.03 to the present situation because there is such a *community* of interests between Dr. Nolph [the party named in the amended pleading] and the originally named defendants that it is patently unreasonable to insulate him from their notice of the lawsuit.

As stated in *Travelers Indemnity Co. v. United States,* the 'purpose of the federal rules [is not] furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed.' 382 F.2d at 106." 725 S.W.2d at 863. Emphasis original.

Referring to these same authorities, Bertlesman and Philipps, *Kentucky Practice,* 4th ed., Civil Rule 15.03, p. 329, states: "The difficulty can be solved in part at least by a liberal interpretation of this requirement. Thus, it has been held that the 'period by law for the commencement of the action' includes a reasonable time for the service of process. Under this interpretation the amendment substituting the newly named defendant relates back to the commencement of the action, if service on the newly named defendant would have been timely had he been correctly named in the first instance.... Under the interpretations the courts have given CR 3, such a reasonable time can be a period of several months, if the plaintiff's attorney is diligent in attempting to effect proper service."

Here the attorney was diligent. Service was effected in four days.

The stated purpose of the Civil Rules calls for their "interpretation [to] promote ends of justice," and "to facilitate decisions on the merits, rather than determinations on technicalities." Bertlesman and Philipps, *Kentucky Practice, supra,* Rule 1, pp. 3–4. No purpose is served by permitting parties with full knowledge that a claim has been made against them to evade answering to that claim simply because the summons was not actually served until one day after the period stated in the statute of limitations.

COMBS, J., joins this concurring opinion.

REYNOLDS, Justice, dissenting.

I respectfully dissent. The majority, with acknowledgement that numerous deci-

sions of this Court exist and demonstrate firm commitments to enforce the statute of limitations, now takes a quantum leap and affords another exception to the rule.

At issue is whether the failure of partners operating a business under an assumed name to comply with KRS 365.015 tolls the statue of limitations in a negligence action. Although *Hayes v. Providence Citizens' Bank & Trust Co.*, 218 Ky. 128, 290 S.W. 1028 (1927), charted the purpose of the statute, it has, this date, been improvidently expanded to provide a nonlegislative purpose under the claim of equitable estoppel. *Hayes, supra,* provided at page 1029:

> "There is nothing inherently vicious in doing business under an assumed name. Such manner of doing business was lawful before the statute was passed.... The statute being penal in its nature and in derogation of the common law, it should not be construed so as to include within its purview cases which do not clearly come within it....
>
> An examination of the statute discloses two very pertinent facts: (a) It expressly imposes for its nonobservance the rather light penalty of a fine between the limits of $25 and $100, or imprisonment from 10 to 30 days, or both; (b) it does not expressly impose any further penalty or consequence. This is a potent indication of a legislative purpose that the penalty expressed should be exclusive...."

The same rationale applies to this case and leads to an unalterable conclusion that failure to comply with the assumed name statute does not prohibit a person from asserting a statute of limitation defense when it is applicable.

There is no appearance, in this record, of an act or conduct which, in point of fact, has misled or deceived a plaintiff or obstructed or prevented him from instituting his suit. It appears to be of no consequence that the decision gratuitously condones a party's unexplainable laxity.

No one disputes that statutes of limitation may work hardships, but the services which they render as a whole outweigh the injuries inflicted upon the unwary. In all events, the broadening of exceptions to the statute is a legislative and not a judicial function since they derive their force alone from statutory enactment. *See Lingar v. Harlan Fuel Co.*, 298 Ky. 216, 182 S.W.2d 657 (1944).

There is no conduct to bring the partner within the provisions of KRS 413.190(2) or equitable estoppel. As stated in *Hackworth v. Hart*, Ky., 474 S.W.2d 377 (1971), unless the conduct of the defendant amounts to an absconding or concealment or obstructs the prosecution of the action it will not toll the running of the statute of limitations.

A partner, in Kentucky, cannot be sued, and a partner of the appellee, Mayfair Diagnostic Laboratory, was not joined as a defendant until 16 months after the cause of action was first discovered. Under our holding in *Nolph v. Scott*, Ky., 725 S.W.2d 860 (1987), which cited with approval *Schiavone v. Fortune, a/k/a Time, Inc.*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), it was said that "the linchpin is notice and notice within the limitation period, and the notice required is notice of the action or notice of the lawsuit." The relation back provisions of CR 15.03(2) does not save the appellants' claim upon joining a partner as a defendant 16 months after discovery of the cause of action.