LANDMAN v. FINCHER.

4-5117

Opinion delivered June 20, 1938.

*Lamoin Oldham* and *E. F. McFaddin,* for appellant.

*Will Steel* and *McRae & Thompkins,* for appellees.

HUMPHREYS, J. The question involved on this appeal is whether appellant is barred by the seven years statute of limitations or laches from recovering an undivided one-third interest in 240 acres of land in Nevada county which was owned by her grandfather, Dennis Watts, at the time of his death, and who died intestate in 1889 leaving surviving him his widow, Letha Watts, and three children, Mary Watts, Jennie Watts and Dave

Watts. After Dennis Watts died the widow and three children resided upon the lands. These parties were negroes. Sometime in 1890, Mary Watts married a negro preacher by the name of Landman and they left the day after the wedding to reside in Redl‌‌‌‌‌‌ Indian Territory. In 1892, Landman wrote to Dave Watts that Mary, his wife, died in childbirth leaving a child. Shortly after he received the letter from Landman, Dave Watts received a letter from a woman by the name of Dora Green from Fort Smith stating that she had in her possession the child that was born to Landman's wife; that Landman was dead, and that if he would send her $60 to pay his funeral expenses, she would send him the child. Dave Watts answered her letter stating that if she would send the child to Camden and tell him what train it would be on he would send her $60. He and his mother went to Camden and remained three days, meeting every train that came to Camden, but the child did not come; that he wrote the woman again asking why she had not sent the child, but heard nothing more from her; that he concluded there was no child, and that the woman was trying to hold him up for $60; that he never heard what became of the child until a short time before her heirship in the land came up which was perhaps in November, 1936.

The widow of Dennis Watts remained upon the land until her death in 1917. Prior to her death in the year 1913 she conveyed her undivided interest as wife of Dennis Watts in said lands to Dave Watts. After purchasing his mother's undivided interest he mortgaged a two-thirds interest in the land to W. M. Fincher & Son to secure an indebtedness he owed them. In 1920 he purchased the undivided interest of his sister, Jennie, in said lands and obtained a deed from her thereto misdescribing the lands as to the range number, and in 1922 he obtained another deed from her correcting the misdescription. C. C. Fincher, the appellee in this case, purchased the mortgage from W. M. Fincher & Son and advanced Dave Watts other amounts in money, goods, etc., and took a mortgage from Dave Watts on a two-thirds interest in said lands and other lands he owned. At the

time this mortgage was given Dave Watts was under the impression that he owned the entire interest in the tract of land having purchased his mother's interest and his sister's interest therein, and believing that the child born to his sister, Mary Elizabeth Landman, was not in existence. C. C. Fincher explained that the reason the mortgage conveyed a two-thirds interest instead of the whole interest was that his nephew prepared the second mortgage, copying the description from the first mortgage Dave Watts gave to W. M. Fincher & Son; that Dave Watts intended to give him a mortgage on the entire interest in the 240-acre tract.

After the death of Dave Watts' mother he moved off the tract of land and rented it to a man by the name of Eason who remained on it for one year. He then made a conditional sales contract of it to A. R. Merrida who moved upon it and who failed to make his payments and rented it from him until he sold the land to C. C. Fincher paying him a third and a fourth of the crops as rent. C. C. Fincher did not foreclose his mortgage against Dave Watts nor take possession under it nor collect rents as mortgagee. Dave Watts owed him $7,000 and sold him the 240-acre tract for $2,400 or $10 an acre, and he gave him credit on his indebtedness for that amount. This was in 1923 and Dave Watts and wife executed a warranty deed to C. C. Fincher for the 240-acre tract. C. C. Fincher recorded his deed and took possession of the land and rented it to A. R. Merrida from year to year for a cash rental. A. R. Merrida attorned to C. C. Fincher and has remained as his tenant upon the land since that date and is still residing upon it. A. R. Merrida testified that during all these years C. C. Fincher had claimed the entire tract of land as his own. The record reflects that he paid all the taxes; collected all the rents, had a roof put on the house, built a garage on the land, fenced all the lands that needed fencing for pasture, cut timber from the land, kept the bushes sprouted off and cultivated all the tillable land; that he cleared fifteen additional acres of the land; that he sold an 80-acre tract of the land to his son who was unable to pay for it and

deeded it back to him; that he sold an oil lease upon it in 1923 and kept all the money; that he sold two oil leases in 1925 upon the land and kept all the money; that he sold an oil lease on the land in 1936 and kept all the money; that he made a royalty deed in 1936 upon the land and kept all the money. In all these oil leases and royalty deeds C. C. Fincher warranted the title and all of them were placed on record. At the time Fincher bought the land it was not worth exceeding $10 an acre, but in 1936 oil was discovered near it and it became very valuable worth perhaps as much as $100,000 or more. After the oil lease had been made to Benedum-Trees Oil Co., the attorneys in examining the abstract discovered that Dennis Watts died owning the land leaving a daughter who had married a preacher by the name of Landman and immediately after moved to the Indian Territory. They also heard it rumored that Mary Landman died in childbirth leaving a girl child. They also heard that about forty years ago they had offered to send the child to Dave Watts if he would send $60 to them to pay Landman's funeral expenses. Based upon this information they went to Oklahoma and made a search for this child, found her and the oil company paid her $2,500 to sign a lease covering whatever interest she might own in the tract of land. This suit was then instituted.

A great volume of testimony was taken in the trial of the case much of it on immaterial issues. The trial court found that appellant was the granddaughter of Dennis Watts being the child of his daughter, Mary, and that at one time she was the owner of a one-third interest in the land as the heir of her mother who had inherited the land from Dennis Watts. The court also found that appellant was barred from recovering her interest therein by the statute of limitations and laches.

The undisputed evidence in this case shows that appellant never made any effort to ascertain who her relatives in Arkansas were or whether her mother had any interest in lands in this state. Her father married a second time and lived several years before he died. Alice Bryant gave the child's stepmother the address of her

people in Arkansas. Alice Bryant had seen the child at a Methodist conference. The stepmother is still living in Sallisaw, Oklahoma. On account of appellant's father being a minister the conference had taken much interest in the child.

If appellant, who lived in an adjoining state, had made any reasonable investigation, she could have found out about her family and her interest in the 240-acre tract of land in this state. Just why she did not make an investigation is not apparent from this record. There is some hint in the record that the lands were of little value until oil was discovered on or near them, but that they have become very valuable, and that this may account for her active interest in them at this time. Her explanation is that she was ignorant of her family, and of her property on her mother's side. According to this record her ignorance of her rights were not due to any fraud or deception that had been practiced upon her by Fincher or Dave Watts. Mere ignorance of one's rights does not prevent the running of the statute of limitations or laches against him unless his ignorance is due to the fraudulent concealment or misrepresentation on the part of those invoking the benefit of the statute or under the doctrine of laches. This court has confirmed the rule announced above in a number of cases among them being *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953; *Hibben* v. *Malone,* 85 Ark. 584, 109 S. W. 1008; *Ark. P. & L. Co.* v. *Decker,* 181 Ark. 1079, 28 S. W. 2d 701; *McKinney* v. *Beattie,* 157 Ark. 356, 248 S. W. 280; *Hill* v. *Wade,* 155 Ark. 490, 244 S. W. 743. Illustrative of this rule of law we quote from *Hibben* v. *Malone, supra,* as follows: "Ignorance of the appellants as to their right in the land is urged against the application of the statute of limitation. Mere ignorance of the existence of a cause of action does not prevent the running of the statute unless there has been fraudulent concealment on the part of those invoking the benefit of the statute."

We think the weight of the evidence in this case shows that C. C. Fincher purchased the entire interest in the 240-acre tract in good faith thinking that Dave Watts

owned the entire tract after he purchased the undivided interest therein from his sister, Jennie, and we think that it was sold by Dave Watts to C. C. Fincher in good faith for a valuable consideration, perhaps more than its market value at the time, thinking that the child born to his sister in Oklahoma was not in existence and that he owned the entire interest in the tract after procuring deeds from his mother and his sister, Jennie. There is nothing in the record indicating that either of these men were attempting to conceal the facts from the child or that Fincher had any knowledge of the existence of the child when he purchased the land. The decided weight of the evidence in the record shows that Fincher took possession after he purchased it in good faith and exercised every act of possession and ownership over the land one could well exercise in order to acquire title by adverse possession. His deed conveyed the whole tract to him with a warranty of title and he placed it on record. He thereafter paid all the taxes and made improvements on the land and collected the rents and made sales of leases the deeds for which were placed upon the record and never at any time recognized that appellant had an interest in the land, in fact he testified positively that he did not know of her existence until those representing the oil company in 1936 came to see whether he knew anything about the existence of appellant. C. C. Fincher was a stranger to the title. He never became a party in the chain of title. His mortgage was not foreclosed and he did not take possession at any time under it. He took possession under a deed given in payment of the mortgage. It is true that Dave Watts was a co-tenant of appellant, but he had good reason to believe that appellant was not in existence and came to the reasonable conclusion that he was the owner of the entire tract of land at the time he conveyed it by deed to C. C. Fincher. His deed conveying the whole tract was at least a color of title to the whole tract, and we think Fincher's adverse holding was of such a hostile character and so openly manifested that even a co-tenant should have taken notice of his claim of ownership. We think appellant is barred by the seven years statute of limitations under the rule

announced, and the application thereof in the cases of *Parsons* v. *Sharpe,* 102 Ark. 611, 145 S. W. 537, and *Wilson* v. *Storthz,* 117 Ark. 418, 175 S. W. 45. Appellant insists that the facts in this case bring it within the case of *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858. In the Inman case the controlling feature was that Mrs. Jones and her son on one hand and Inman on the other connived together to acquire the whole title in fraud of the rights of their co-tenants. In the instant case there is no evidence at all that Fincher and Dave Watts connived together to defraud appellant out of her interest. According to the weight of the evidence Dave Watts thought that appellant was not in existence, and C. C. Fincher had no knowledge whatever that she was in existence.

No error appearing, the decree is in all things affirmed.