WILLIAMS v. PURDY, EXECUTRIX.

5-322 - 5-323                    265 S. W. 2d 534

Opinion delivered March 8, 1954.

*J. R. Wilson* and *Paul K. Roberts,* for appellant.

*Thomas E. Sparks,* for appellee.

MINOR W. MILLWEE, Justice. Sometime in 1918, Joseph A. Williams, while serving as a soldier in the U. S. Army, bought a Service Life Insurance policy and named his half-sister, Amelia Williams, as beneficiary. Joseph died intestate on October 18, 1918, and Amelia received installment payments on the insurance until her death in 1924. The federal law at that time, 43 Stats. at Large, 1310, Chapter 553, § 14, provided that if the beneficiary ". . . dies prior to receiving all the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured, the present value of the monthy installments thereafter payable . . ."

After Amelia's death, her mother, Myra E. Williams, brought suit against L. E. Purdy as administrator of Joseph's estate, in which action she claimed to be the sole heir of Amelia Williams, who was the sole heir of Joseph Williams. The parties to that action stipulated that Myra was the wife of George J. Williams; that Joseph was the son of George Williams by a former wife; that Joseph died intestate leaving as his sole heir

a half-sister, Amelia, born in lawful wedlock, the daughter of Myra and George Williams; and that Myra is the sole heir of Amelia.

At the November, 1929, term of the Dallas Circuit Court, a judgment was entered in favor of Myra, and in satisfaction thereof, the administrator paid her $8,069.66, Joseph's entire estate.

On July 3, 1948, appellants herein, the collateral heirs of George Williams, sought to vacate the judgment obtained in 1929 against L. E. Purdy, administrator, on the ground of fraud in obtaining the judgment under the fourth subdivision of Ark. Stats. § 29-506. They filed an intervention in the 1929 action alleging that Myra was never married to George Williams; that Amelia was therefore illegitimate; and that both Myra and L. E. Purdy knew these facts to be true at the time they entered into the stipulation to the contrary. Appellants also alleged they were non-residents of Arkansas, that they had no notice of their right to said insurance, and that their cause of action was first revealed to them in the course of other litigation in July, 1945. It was further alleged that after the death of George J. Williams the non-resident families of the appellants tried to keep up correspondence with the family of George J. Williams in Arkansas but that such correspondence "failed at all times to show the status of Joseph A. Williams or Amelia Williams on account of the character of the correspondence which was either due to the illiteracy of Myra E. Williams or her desire to conceal the status of the lands belonging to George J. Williams at the time of his death." There are other allegations in the form of conclusions that appellants had been defrauded of the insurance money by the fraudulent concealment of Myra E. Williams or certain unnamed persons acting in her behalf.

Appellants filed with their petition in intervention a cross-complaint in which they asked for judgment against: the executrix of the estate of L. E. Purdy, deceased, and the sureties on his administrator's bond; the

278

administrator of the estate of Myra Williams, deceased, and his sureties; the distributees of Myra Williams' estate, their administrators and their guardians; and the bondsmen on the refunding bonds required in the estate of Myra Williams.

On the same day the intervention was filed, an almost identical complaint was filed by the same parties, the only difference being that the parties were designated "intervenors and cross-complainants" in one action and "plaintiffs" in the other. With the filing of every amendment to the intervention there was also filed an almost identical amendment to the complaint. In both cases, the trial judge sustained a demurrer on the ground that the action was barred by the statute of limitations. The cases have been consolidated for purposes of this appeal.

In the absence of any circumstances tolling the running of the statute of limitations, appellants' cause of action is clearly barred either by the 5-year limitation imposed in Ark. Stats. § 37-213 or the 8-year limitation applicable to actions on the bonds of administrators and executors under Ark. Stats. § 37-211. It has repeatedly been held by this court that the statute of limitations may be raised by demurrer. *Herpin* v. *Webb*, 221 Ark. 798, 256 S. W. 2d 44. However, this rule has certain qualifications, for in *State, use Glover* v. *McIlroy*, 196 Ark. 63, 116 S. W. 2d 601, it is said: "It is urged, and we think correctly so, that the plea of the statute of limitations cannot be raised by demurrer, unless the complaint shows not only that the time had elapsed so as to bar the action, but in addition thereto, it must appear also, from the complaint, the non-existence of any ground for the avoidance of the statute of limitations. *St. L., I. M. & S. Ry. Co.* v. *Brown*, 49 Ark. 253, 4 S. W. 781; *Collins* v. *Mack*, 31 Ark. 684; *Rogers* v. *Ogburn*, 116 Ark. 233, 172 S. W. 867; *McCollum* v. *Neimeyer*, 142 Ark. 471, 219 S. W. 746."

Mere ignorance of one's rights does not prevent the operation of the statute of limitations, but where the **ignorance is produced by affirmative and fraudulent**

acts of concealment, the statute of limitations does not begin to run until the fraud is discovered. *Landman* v. *Fincher,* 196 Ark. 609, 119 S. W. 2d 521; *Kurry* v. *Frost,* 204 Ark. 386, 162 S. W. 2d 48; *State of Tennessee* v. *Barton,* 210 Ark. 816, 198 S. W. 2d 512. Some affirmative act of concealment must be done; mere failure to reveal is not enough, unless there is a duty to speak. *Arkansas Power and Light Co.* v. *Decker,* 181 Ark. 1079, 28 S. W. 2d 701. As the court said in *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953: "No mere ignorance on the part of plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable, knowledge of it." It has also been held that blood kinship alone does not constitute such relationship as requires revelation of the facts. *Stephens* v. *Walker,* 193 Ga. 330, 18 S. E. 2d 537. Nor does the mere fact that the appellants were non-residents entitle them to preferred consideration, for Ark. Stats. § 37-230 provides: "This act and all other acts of limitation now in force, shall apply to non-residents as well as residents of this state." This is also the general rule in the absence of a statute. 54 C. J. S., Limitation of Actions, § 208.

The applicable rule is stated in 34 Am. Jur., Limitation of Actions, § 166, as follows: "Unless the fraud was of such a character as necessarily to imply concealment, it is necessary, in order to postpone the running of the statute of limitations until the discovery of the fraud, that ignorance thereof shall have been produced by affirmative acts of the guilty party. In other words, the fact that the complainant was ignorant of the fraud until after the right to recover was barred is not *per se* sufficient to entitle him to the benefit of the exception under consideration, in the absence of any act or conduct on the part of his adversary calculated to mislead, de-

ceive, or lull inquiry." And in § 167, it is said: "To prevent the barring of an action, it must appear that the fraud not only was not discovered, but could not have been discovered with reasonable diligence, until within the statutory period before the action was begun. A plaintiff cannot excuse his delay in instituting suit if his failure to discover the fraud was attributable to his own neglect."

When tested by these rules, it is our conclusion that the trial court correctly held appellants' action barred by the statute of limitations. Insufficient facts are alleged in appellants' complaint to sustain the assertion or conclusion that Myra E. Williams and L. E. Purdy fraudulently concealed a cause of action from the appellants. There are no allegations of such affirmative and positive acts of fraudulent concealment on their part as to toll the running of the statute of limitations nor is the fraud alleged of such character as necessarily implies concealment. Indeed it is alleged that Myra E. Williams' failure to notify appellants might just as well have resulted from her illiteracy as from anything else. By the exercise of reasonable diligence appellants could have ascertained the death of their kinsman, Joseph A. Williams, and the status of his estate. These and other facts pertinent to the 1929 judgment had been matters of public record for more than 18 years before the institution of the instant proceedings.

There is also another reason why the demurrer of appellees should have been sustained. In *Parker* v. *Sims*, 185 Ark. 1111, 51 S. W. 2d 517, the court said: "The fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed. It must be a fraud practiced upon the court in the procurement of the judgment itself." The rule is stated in *Hendrickson* v. *Farmer's Bank and Trust Co.*, 189 Ark. 423, 73 S. W. 2d 725, as follows: "The fraud for which a decree will be canceled

must consist in its procurement and not merely in the original cause of action. It is not sufficient to show that the court reached its conclusion upon false or incompetent evidence, or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, in issue in the proceeding before the court which resulted in the decree assailed." See also, *Manning* v. *Manning,* 206 Ark. 425; 175 S. W. 2d 982; *Alexander* v. *Alexander,* 217 Ark. 230, 229 S. W. 2d 234; *Blankenship* v. *Montgomery,* 218 Ark. 834, 239 S. W. 2d 272.

The fraud complained of in this case, i. e. the alleged false stipulation of facts showing Amelia Williams to be the sole heir of Joseph A. Williams, was not extrinsic of the issue actually tried and decided, for the determination of heirship was primary in the rendering of the judgment sought to be set aside. Hence, the action of Myra E. Williams and L. E. Purdy in entering into a false stipulation in the original action would have amounted to intrinsic fraud and not the type of fraud required to vacate the judgment. It follows that the complaint failed to state a cause of action on the ground of fraud in the procurement of the judgment.

Affirmed.