**MINING CORPORATION OF ARKANSAS, Plaintiff,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant.**

**No. HS–69–C–11.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.
March 26, 1971.

Tackett, Young, Patton & Harrelson, Texarkana, Ark., for plaintiff.

Gaughan, Laney, Barnes & Roberts, Camden, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge, Sitting by Designation.

There is before the court the motion of defendant, International Paper Company, for declaratory and summary judgment filed November 9, 1970, supported by copies of conveyances, records, affidavits, certificates and other evidence, and brief in support thereof.

The plaintiff filed no response but did submit brief on March 2, 1971, in opposition to defendant's motion and in answer to defendant's brief.

The complaint was filed July 16, 1969. Jurisdiction exists because of diversity of citizenship of the parties and the amount involved. 28 U.S.C. § 1332.

The plaintiff alleged that it is the owner of the mineral rights in certain described real property in Clark County, Arkansas; that during the years 1942, 1943, 1944 and 1945, the defendant leased to various individuals and corporations the mineral interests under said lands and received a 10 percent royalty for all of the mercury which was removed from said lands and sold to the United States; that the defendant fraudulently concealed from plaintiff's predecessor in title that it was removing minerals from the lands and did so with the intent to defraud its predecessor in title and to keep for itself all the proceeds derived from the sale of said

mercury; that through the years that have passed since the minerals were mined, the defendant has further concealed from plaintiff and its predecessors in interest any operations regarding the minerals beneath said lands; that plaintiff did not discover the said minerals had been removed until approximately January 1, 1969, and that plaintiff's predecessor in title never had knowledge that the minerals had been removed and sold.

On July 30, 1969, the original answer of defendant was filed, in which it denied that plaintiff acquired title as alleged in the complaint to the cinnabar ore, mercury.

On October 7, 1969, the defendant filed its first amendment to its answer, in which it alleged that the mercury taken from the lands described in the complaint was taken during the years 1942, 1943, 1944 and 1945, and that the royalty from such production which plaintiff seeks to recover was received by defendant during those years; that the claims of plaintiff are barred by laches and limitations. The defendant also alleged "that the reservation contained in the deed from Grayson-McLeod Lumber Company to Graysonia Nashville Lumber Company under which plaintiff claims title to the mercury produced from the lands described in the complaint does not include mercury or cinnabar under the term mineral. That the term mineral is qualified and limited by the words, coal, oil and gas that follow; and mercury ore in the locality of the lands was not known to exist in the year 1911 when the reservation was made."

On November 16, 1970, defendant filed its second amendment to the answer, in which it alleged that the deed and contract dated December 3, 1962, executed by Inghram Grayson, individually and as trustee, to plaintiff is a cloud on the title of defendant and others who acquired title under similar circumstances through the deed from Grayson-McLeod Lumber Company con-

taining the alleged reservation of mineral, oil, gas and coal; that at the time the contract and deed was executed by Inghram Grayson to plaintiff, he had no title to the mineral mercury or to any other minerals, oil, gas, or coal on said lands.

The defendant alleged eight grounds upon which it based its motion for declaratory and summary judgment. In its brief it discussed all of the issues but consolidated them under three headings: (1) the deed to Graysonia-Nashville Lumber Company was not intended to reserve minerals, oil, gas and coal in favor of the grantor; (2) the plaintiff's claim is barred by limitations, laches and estoppel; and (3) the term "mineral" as used in the reservation would not include mercury, the existence of which in this area was not recognized until 1931.

The plaintiff in its brief contended that many of the issues and allegations contained in the brief of defendant are matters which are not subject to a motion for declaratory and summary judgment for the reason that many of the assumptions made by defendant will be controverted in fact. Plaintiff then proceeded to discuss only a portion of the issues and argued that the issues are not susceptible to determination by summary judgment.

Rule 56(c), Fed.R.Civ.P., provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

At the time defendant filed its motion, November 9, 1970, it also filed 14 exhibits comprising several pages of affidavits, deeds, documents and official bulletins detailing the discovery and geology of deposits of cinnabar. The plaintiff filed no affidavits or other documents in opposition to the facts re-

cited and established by the exhibits filed by defendant. The plaintiff seems to argue that the allegations contained in the complaint are decisive of whether a motion for summary judgment should be granted.

In Marion County Co-op. Ass'n v. Carnation Co. (W.D.Ark.1953), 114 F.Supp. 58, the court had occasion to examine the law relative to a similar contention, and after a thorough discussion held at page 64:

"'If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to controlling material facts, then the court should enter summary judgment.'"

On appeal, the Court of Appeals for the Eighth Circuit, 214 F.2d 557 (1954), after examining the affidavits and documents supporting the defendant's (appellee's) motion for summary judgment, said at page 561:

"Against this showing by defendant that it had paid the usual and normal price for milk during the period alleged in the complaint, plaintiff offered nothing to rebut or contradict defendant's evidence or to affirmatively establish the allegations of the complaint. It chose to rest on the broad charge that defendant had paid a 'fictitious' price, or a price in excess of the usual and normal price, for milk and thereby 'run a corner' on the market. It is clear that no genuine issue of material fact existed as to any of the facts stated in the affidavits or depositions. The question, therefore, resolves itself to this: Is a general allegation in a complaint, standing alone, sufficient to withstand a motion for summary judgment supported by a prima facie showing that no genuine issue of material fact exists?

"Courts, including our own, which have considered this question have uniformly answered it in the negative."

In 1963, Rule 56, Fed.R.Civ.P., was amended by adding the following to subdivision (e):

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The exhibits, indisputable records, and noncontroverted affidavits, filed by defendant in support its motion, establish that there is no genuine issue as to any material fact.

The land to which title of the mineral rights is in question is described as:

E½ SW¼ and the W½ SE¼, Sec. 34, T 6 N, R 23 W.
SW¼, Sec. 6, T 7 S, R 22 W.
SW¼, Sec. 5, T 7 S, R 22 W.
S½, Sec. 1, T 7 S, R 23 W.

The chain of title of defendant, except the SE¼ of Sec. 1, is as follows:

Grayson-McLeod Lumber Co. to Graysonia Nashville Lumber Co.
May 10, 1911.

Graysonia Nashville Lumber Co. to J. L. Johnston, as Trustee.
July 17, 1919.

J. L. Johnston, Trustee, to Louisiana Pulp & Paper Company.
April 15, 1925.

Louisiana Pulp and Paper Co. to Southern International Paper Co.
March 4, 1927.

Southern International Paper Co. to International Paper Co.
Dec. 5, 1927.

International Paper Co. to Southern Kraft Corp.
April 1, 1930.

Southern Kraft Corp. to Old International Paper Co.

Old International Paper Co. to New International Paper Co.

Dec. 23, 1941.

The title to the SE¼ of Sec. 1, T 7 S, R 23 W, was not conveyed by J. L. Johnston, Trustee, to Louisiana Pulp and Paper Company in his deed of April 15, 1925, but was conveyed as follows:

J. L. Johnston, Trustee, to Felix E. Gunter, Trustee,

August 1, 1925.

Felix E. Gunter, Trustee, to S. E. Evans,

May 14, 1938.

S. E. Evans and wife to Caddo Quicksilver Corp.

Oct. 20, 1941.

Drew Bowers, Trustee in Bankruptcy for Caddo Quicksilver Corporation to Ozan Lumber Company,

May 21, 1946.

Ozan Lumber Company to International Paper Co.

June 17, 1946.

On June 5, 1873, William Grayson and others incorporated under the laws of the State of Missouri the St. Louis Wooden Gutter Manufacturing Company. The name was later changed to Grayson-McLeod Lumber Company. On July 6, 1907, Grayson-McLeod Lumber Company filed its Missouri articles of incorporation in the office of the Secretary of State of Arkansas. The Arkansas charter expired on May 22, 1923, due to the expiration of its existence in Missouri. Graysonia-Nashville Lumber Company was chartered March 7, 1911. On April 23, 1923, the charter was revoked by the proclamation of the Governor of Arkansas for nonpayment of franchise taxes.

The deed of May 10, 1911, from Grayson-McLeod Lumber Company to Graysonia-Nashville Lumber Company contains the following:

"Reserving, however, any right of way that may have been made by us to the following railroads: The Gurdon and Fort Smith Railroad; the St. Louis, Iron Mountain & Southern Railway; the Antoine Valley Railroad, or what is now known as the Memphis, Dallas & Gulf Railroad, and the Arkansas Southwestern Railroad.

"Also reserving all minerals, coal, oil and gas on said lands, together with the right to enter upon said lands to prospect or drill for minerals, coal, oil or gas and to mine and carry away any minerals or coal found and to operate any gas or oil wells and the use of so much of the surface as may be required for the proper working of such mines and the operation of such wells and the storage of the products thereof as may be in any deeds made to the Grayson McLeod Lumber Company reserving these rights."

The plaintiff's claim of title is based upon a written agreement, Exhibit 3 to the motion, dated December 3, 1962, between Inghram Grayson (first party), "individually, as trustee, director, liquidating trustee, and in any capacity in which he may own or possess an interest as hereinafter set out," and wife, Edith, and the plaintiff, Mining Corporation of Arkansas (second party), which states that William Grayson, Sr., died "about the year 1910" survived by four sons: Walter E. Grayson, George H. Grayson, Sr., Inghram Grayson and William Grayson, Jr.; that Inghram Grayson is the last surviving son of William Grayson, Sr.; that the parties to the agrement are informed that William Grayson, Sr., at his death owned the minerals underlying various lands in the State of Arkansas.

"At the time of his death, William Grayson, Sr., owned the majority of the stock in Grayson McLeod Lumber Company (said Corporation being successor to the St. Louis Refrigerator Wooden Gutter Company), and said Grayson McLeod Lumber Company owned, then and prior thereto, many thousands of acres of land in the State of Arkansas, and the minerals underlying other lands in Arkansas.

"Said William Grayson, Sr., and Grayson McLeod Lumber Company

owned or had acquired various other corporations, said acquired corporations also owning lands and interests in lands also located in Arkansas. Following the death of William Grayson, Sr., part of the lands and assets of the said Grayson McLeod Lumber Company became merged in another corporation or other corporations, including without being limited to, some known as Graysonia Nashville Lumber Company and Ozan Graysonia Lumber Company. Said corporations have been inactive or dissolved for many years. At various times Inghram Grayson and others were directors in various of said corporations, and Inghram Grayson is the last surviving director and liquidating trustee of the various corporations hereinabove described.

\* \* \* \* \* \*

"The parties to this Agreement are not sure where all of said lands are located; but they believe they are located in, without being limited to, the Counties of Clark, Pike, Montgomery, Sevier, Howard, Nevada, Hempstead, Dallas and Ouachita, all in the State of Arkansas; \* \* \*

\* \* \* \* \* \*

"First Party hereby conveys, assigns, transfers and sets over to Second Party the full and entire interest that he may own or claim in any capacity in and to any lands, or minerals therein, arising as hereinabove described, either in whole or in part, wherever situated, located in the State of Arkansas [then follows the names of the counties heretofore listed]. The minerals hereby conveyed include, without being limited to, the full and complete mineral interests in and to said lands (including without being limited to, coal, iron, bauxite, lead, gold, silver, copper, cinnabar, barium, oil, gas and all petroleum resources, and any and all other minerals) whether now known or hereafter determined to possess value."

It is impossible to determine from the provisions of the contract what interest, if any, Inghram Grayson had in any of the lands formerly owned by any of the corporations mentioned in the contract. He states that he acted as an individual, trustee, director, liquidating trustee and in any capacity in which he may own or possess an interest in the lands. Grayson-McLeod Lumber Company ceased to exist as a corporation on May 22, 1923, and Graysonia-Nashville Lumber Company ceased to exist April 23, 1923, thirty-nine years prior to the date of the contract. No affidavits or any other documents appear in the record evidencing any interest that Inghram Grayson had in the lands in question.

Plaintiff has not filed any affidavits or documents controverting in anywise the facts as established by the exhibits to defendant's answer.

The contract entered into between Inghram Grayson and the plaintiff is not evidence of the interest, if any, that Inghram Grayson had in cinnabar or mercury in the lands that were formerly owned by Grayson-McLeod Lumber Company. The contract purports to convey to the plaintiff only the mineral interest of Inghram Grayson in the lands, which he may own or possess in any capacity, individually, as trustee, director or liquidating trustee. All that is established by the contract is that Inghram Grayson is the last surviving son of William Grayson, Sr., who died "about the year 1910." It is further stated that according to Inghram Grayson's information his father, William Grayson, Sr., at his death owned the mineral interest underlying various lands referred to in the contract. Following this statement the contract recites that at the time of the death of William Grayson, Sr., he owned the majority of the capital stock in Grayson-McLeod Lumber Company. Thus, he states that since his father was the owner of a majority of stock in Grayson-McLeod Lumber Company, in some way or another he succeeded to the ownership of the mineral interest because the minerals were reserved in the deed executed by Grayson-McLeod Lumber Company to Graysonia-Nashville

Lumber Company on May 10, 1911, fifty years, six months and twenty-three days prior to the execution of the contract between him and plaintiff.

There was no reservation to the grantor, Grayson-McLeod Lumber Company, of any mineral interest. The first paragraph of the claimed reservation is nothing more than an exception. If the second paragraph may be considered as a reservation, it only reserved such mineral interests as may be in deeds made to the Grayson-McLeod Lumber Company reserving said rights. In other words, you can only determine from the second paragraph that the thing the grantor was reserving was such interest as may have been reserved by the grantors in any deeds conveying the land to Grayson-McLeod Lumber Company.

■ Thus, the so-called reservation is, in the opinion of the court, void for indefiniteness. It should be borne in mind that the grantee in the deed was organized as a corporation on April 11, 1911, and the deed was executed May 10, 1911, by W. E. Grayson, as president, and E. H. Pelton, secretary, of Grayson-McLeod. According to the statement in the contract, the father of Inghram Grayson, William Grayson, Sr., died in or about the year 1910. Even if the reservation in the deed of "all minerals, coal, oil and gas," should be considered as a valid reservation at the time, May 10, 1911, such reservation did not include cinnabar or mercury for the reason that under the law of Arkansas a reservation which uses the term "minerals" only includes those minerals known to exist in the area embraced in the deed at the time of the execution of the deed, and cinnabar or mercury was not known to exist at that time. Mothner v. Ozark Real Estate Co (8 Cir. 1962), 300 F.2d 617; Middleton v. Western Coal Mining Co. (W.D.Ark.1965), 241 F.Supp. 407, aff'd 362 F.2d 48 (8 Cir.); Singleton v. Missouri Pac. R. Co. (E.D.Ark.1962), 205 F.Supp 113; Missouri Pac. R. Co. v. Strohacker (1941), 202 Ark. 645, 152 S.W.2d 557.

Exhibit 12 filed by defendant contains excerpts from U. S. Geological Survey Bulletin 886–C, 1938, showing that cinnabar, mercury, was first discovered in Arkansas in 1930. Exhibit 13, U. S. Geological Survey Bulletin 936–H, 1932, and Exhibit 14, excerpts from Information Circular No. 2, prepared in 1932, by George C. Branner, State Geologist, contain a detailed description of the occurrence and geology of the area involved and gives the discovery dates of cinnabar as June 29, 1931. In Bulletin 886–C an article by John C. Reed and Francis G. Wells commences with the following statement: "Cinnabar was discovered near the southern border of the Ouachita Mountains, in southwestern Arkansas, in 1930." Bulletin 936–H in the introduction states: "Cinnabar was first identified in this region in July 1931." In Information Circular No. 2, entitled "Cinnabar in Southwestern Arkansas," published in 1932 and reissued in 1964, the area of the cinnabar deposit is set out and the amount of cinnabar removed up to April 9, 1932, is set at 1,981 pounds. Also, a reference is made to the earlier article on cinnabar by the same author which appeared in the August 30, 1931, issue of the Arkansas Gazette.

The plaintiff made no effort to dispute the information contained in the exhibits or to set forth any facts indicating the known existence of cinnabar in the area of the location of the lands at the time of the execution of the deed.

Therefore, cinnabar was not included in the so-called reservation contained in the deed under which plaintiff claims, and plaintiff acquired no interest under the contract in cinnabar discovered many years subsequent to the date of the deed, May 10, 1911.

The defendant's contention No. 2 is that the plaintiff's claim is barred by limitations, laches and estoppel. The statute of limitations for trespass on lands is three years. Ark.Stat.Ann. § 37–206 (1962 Repl.). Paragraph 9 of plaintiff's complaint alleges that the defendant has caused to be taken and removed from the land cinnabar ore, and

said taking was fraudulent and was fraudulently concealed from the plaintiff and its predecessor in title; that the defendant has collected as royalty from the said wrongful and fraudulent removal; that plaintiff is entitled to treble damages for said wrongful taking. The prayer is that it recover such damages and its costs.

In Arkansas Power and Light Co. v. Decker (1930), 181 Ark. 1079, 28 S.W. 2d 701, the court at page 1079 of 181 Ark. held that under the statute providing that all actions for trespass on lands must be commenced within three years after the cause of action accrued, an action for taking gravel from land was barred after three years. See, Jones v. Brooks (1961), 233 Ark. 148, 343 S.W. 2d 99; Morrilton Homes, Inc., v. Sewer Improvement District No. 4 (1956), 226 Ark. 22, 287 S.W.2d 581.

The ore was removed by the lessees of the defendant during the years 1942, 1943, 1944 and 1945. The plaintiff does not dispute that the applicable statute is three years, but on its brief argues that there was a fraudulent concealment of the cause of action. It did not submit any affidavits or exhibits in support of this allegation. The law is well settled in Arkansas as to when the statute of limitations is tolled by acts of concealment and fraud.

In Arkansas Power and Light Co. v. Decker, supra, the court at page 1083 of 181 Ark., at page 703 of 28 S.W.2d said:

" 'No mere ignorance on the part of plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself.' "

See; Hunter v. Connelly (1969), 247 Ark. 486, 446 S.W.2d 654; Morrilton Homes, Inc., v. Sewer Improvement District No. 4, supra; Williams v. Purdy, Executrix (1954), 223 Ark. 275, 265 S.

W.2d 534; Landman v. Fincher (1938), 196 Ark. 609, 119 S.W.2d 521.

■ There was no affirmative act of concealment by International, and plaintiff cannot be heard to claim fraud or concealment as a defense based only on an allegation in the complaint when the defendant has offered substantive proof that there was no fraud or concealment.

In the affidavit of W. W. Southall, (Exhibit 8), an employee of International since 1937 in various capacities in connection with the inspection of the company's land and timber, he described the mining operations on the lands involved as well as in the general area which were in progress during 1942, 1943, 1944 and 1945, as follows:

"These operations were carried with open excavations on the surface and with tunnels extending into the hills at ground level and in some instances shafts sunk into the ground. The ore, cinnabar, was taken out of the ground and processed in buildings erected near the mines using standard methods and equipment. The refined mercury was transported by trucks over roads connecting the mines with established highways. The mines and structures were plainly visible and the public was well aware of the movement of the trucks and people to and from the mining operations. The operations on the company's lands were continued for about three or four years during World War II. Prior to that time, in this area there were individuals engaged in producing ore from trenches dug on the surface. They were known as higraders.

"I have just returned from a trip to Clark County and the results of the mining is still evident. The tunnel openings have all caved in, but there is evidence of the tunnels and also highly mineralized water flowing from the tunnel openings. There are also several waste ore piles evident and areas where strip or surface mining was done are plainly visible. The concrete piers and blocks supporting

the Humphrey Gold Corporation's reduction plant are still in place and very evident."

David Campbell, who is presently Regional Forester with responsibility for the timber land operations of International, but who from September 1, 1947, until October 1957 was Division Forester, stated in Exhibit 10:

"After moving to Arkansas in 1947 and over the next several years I traveled many times with Mr. W. W. Southall and once or twice with Mr. Emmett Gaughan in the cinnabar mining area in Clark (and also Pike) County. None of the mines on International Paper Company lands were hidden as all were served by roads and mostly power lines and usually showed extensive piles of waste rock or dirt. Because of the danger involved, several of the open pit workings were protected by fences. Over the years, to prevent accidents, some vertical mine shafts were plugged or filled as required under the State mining laws.

"For several years calcined ore from the retorts on International's lands were used as a road surfacing material both by International Paper Company and Clark County. This renewed traffic called additional attention to the old workings."

It is interesting to note that one of the principal shareholders of the plaintiff Mining Corporation at the time of incorporation February 12, 1959, was George H. Grayson, son of George H. Grayson, Jr., who died in 1924, who was the son of William Grayson, Sr., and whose post office address was listed as Jack Tar Motel, Hot Springs, Arkansas.

Since the undisputed facts show that there was no fraud or concealment on the part of the defendant, the claim of plaintiff of fraudulent concealment on the part of defendant is entirely without foundation.

The contract dated December 3, 1962, heretofore referred to, was filed for record on February 8, 1963, and is now recorded in Record Book 250, pages 348–350, Clark County, Arkansas, and defendant contends that it is a cloud on the title of this defendant and should be removed and canceled. The court agrees that the said deed contract does constitute a cloud on the title of defendant and its grantees, and should be canceled and removed.

For the reasons hereinbefore stated, judgment is being entered today granting the motion of defendant for summary judgment, and dismissing the complaint of the plaintiff and canceling the contract deed above mentioned with costs in favor of defendant.