Joseph and Sharon ELDER *v.*
The SECURITY BANK of Harrison, *et al.*

CA 99-216 5 S.W.3d 78

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 1, 1999

*Davis & Goldie*, by: *Steven B. Davis*, for appellants.

*Reeves Law Firm*, by: *Ken Reeves*, for appellees Security Bank and First Commercial Mortgage Co.

*Vowell & Atchley*, by: *Stevan E. Vowell*, for appellee Liberty Life Insurance Co.

JOHN B. ROBBINS, Chief Judge. Appellants Joseph Clifford Elder and Sharon Lee Elder appeal from a summary judg-

ment rendered in favor of appellees Security Bank of Harrison, et al. We affirm.

On August 7, 1980, the Elders purchased a home and financed it with a thirty-year mortgage. At the time of the loan closing, Barry Molder, who was a loan officer for Security Bank of Harrison, sold the Elders a mortgage-payment disability insurance policy. The Elders remembered that they never received a copy of the policy, but that Mr. Molder assured them that, in the event of a disability, the mortgage insurance would cover the loan payments for the duration of the thirty years. In fact, however, the policy only provided for a maximum of five years of monthly payments in the event of disability.

Mr. Elder became totally disabled in March 1988, at which time the disability policy had passed to Integon. Integon began making the monthly mortgage payments and sending a monthly worksheet to the Elders reflecting this payment. Then, in December 1991, appellee Liberty Life acquired the policy from Integon. In May 1992, Liberty Life provided the Elders with a copy of a document entitled policy schedule, which summarized the coverage of the Elders' insurance policy. According to Mrs. Elder, this was the first time she had seen the policy schedule, and she contacted Liberty Life with questions about it. A representative of Liberty Life replied in October 1992 that the coverage was for a thirty-year term and a monthly benefit of $300. In April 1993 (five years after the disability), Liberty Life discontinued paying the monthly mortgage payments.

The Elders brought suit against the appellees on December 30, 1993, alleging breach of contract and negligence. Their complaint averred:

> At the time the disability insurance policy was issued, Barry Molder, acting within the apparent scope of his duties as agent for Security Bank, First Commercial and Liberty Life, contractually obligated himself to provide mortgage insurance for the full term of the plaintiff's mortgage. The selection by Barry Molder of a policy of insurance coverage which provided only sixty (60) months of coverage constitutes a breach of contract for which damages will lie. In the alternative, Security Bank acting by and through Barry Molder undertook a duty of reasonable care to the Elders to select an appropriate policy of credit disability insurance.

Security Bank breached its duty by selecting a policy which was limited to sixty (60) months of benefits.

Upon consideration of the pleadings and depositions, the circuit court entered summary judgment in favor of the appellees. Specifically, the court found that the Elders' complaint was barred by the applicable statute of limitations. The court stated:

> The Court finds that it is clear from the pleadings that the application for disability insurance was completed by the Plaintiff, Joseph Clifford Elder, on August 7, 1980, and was turned over to Barry Molder as agent for or employee of the Security Bank of Harrison. A three-year Statute of Limitations, after the cause of action accrues, is applicable to both causes pled by the Plaintiffs. The Court finds that the Plaintiffs knew or should have known of the limited term (five years) payments under the policy when they received the "check stubs" with each check issued under the terms of the disability policy. Each monthly stub provided ample information concerning the term or length of payments. The Court finds that the first "check stub" was received by the Plaintiffs in May of 1988 and the applicable Statute of Limitations as to both causes of action pled by the Plaintiffs expired three years from that date. The Plaintiffs' original complaint herein was filed on December 30, 1993, which was after the time of expiration of the Statute of Limitations.

The Elders now appeal, arguing that the circuit court erred in granting summary judgment. They contend that the court erred in finding that they knew or should have known of the limited payment schedule in May 1988; in failing to consider the appellees' failure to disclose the terms of the policy; and in finding that the cause of action in contract accrued before April 1993, when the payments were terminated.

 Arkansas Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of sustaining a motion for summary judgment; once the moving party meets this burden, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Calcagno v. Shelter Mut. Ins. Co.*, 330 Ark. 802, 957 S.W.2d 700 (1997). On appeal, we view the

evidence in the light most favorable to the opposing party and resolve all questions and ambiguities against the moving party. *Id.* Summary judgment is proper when the statute of limitations bars the action. *Alexander v. Twin City Bank*, 322 Ark. 478, 910 S.W.2d 196 (1995). We will affirm a summary judgment when the plaintiff admits a dispositive fact. *Sublett v. Hipps*, 330 Ark. 58, 952 S.W.2d 140 (1997).

In Mrs. Elder's deposition, she acknowledged that, at some time when she was receiving monthly forms from Integon, she noticed an expiration date of 5/1/93. She thought that the date was wrong, and stated she thought the insurance company was "faking us out." As a result of the discrepancy, she asked for a copy of the policy along with the policy schedule, and received the policy on January 5, 1989. However, she stated that the policy schedule reflecting the five-year limit was not received until May 1992. Mrs. Elder testified that, when the policy was issued, she was led to believe it covered the full thirty-year term of the mortgage and that she believed this to be the case until the payments were terminated in April 1993.

In their argument for reversal, the appellants concede that the applicable limitations period is three years pursuant to Ark. Code Ann. § 16-56-105 (1987). However, they argue that their claims against the appellees were not barred by this limitations period.

The appellants first contend that the circuit court erred in ruling that they knew or should have known of the actual terms of the written policy more than three years prior to December 30, 1993. Appellants note that the Integon form that was introduced into evidence was dated 12/4/91. They further note that that exhibit had the notation "Expirty Date 5/1/93." Thus, appellants allege, it was not clear as to when these monthly forms began to reflect this notation, and at any rate the notation was ambiguous.

■ The undisputed facts clearly established that Mrs. Elder had actual notice of the five-year policy limit well before three years preceding December 30, 1993. She admitted that she saw the expiration date, thought it was incorrect, and that this caused her to ask for the policy, which she received on January 5, 1989. More importantly, the policy received on that date contained the following language:

> In no event shall the periodic indemnity payable hereunder in the event of disability exceed the lesser of (a) 60 months of such payments....

Thus, by Mrs. Elder's own admission, she was on notice of the alleged breach of contract on January 5, 1989, at the latest, and the limitations period expired before the complaint was filed.

The appellants next point out that, pursuant to Ark. Code Ann. § 23-87-110 (Repl. 1992), the appellees were responsible for providing a copy of the policy, and they failed to do so until January 1989. The appellants also note that a representative of Liberty Life assured them in October 1992 that the policy covered the full thirty-year term. Appellants argue that appellee's failure to disclose the policy provisions, and its concealment of the same, tolled the statute of limitations.

In *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954), the supreme court held:

> Mere ignorance of one's rights does not prevent the operation of the statute of limitations, but where the ignorance is produced by affirmative and fraudulent acts of concealment, the statute of limitations does not begin to run until the fraud is discovered. *Landman v. Fincher*, 196 Ark. 609, 119 S.W.2d 521; *Kurry v. Frost*, 204 Ark. 386, 162 S.W.2d 48; *State of Tennessee v. Barton*, 210 Ark. 816, 198 S.W.2d 512. Some affirmative act of concealment must be done; mere failure to reveal is not enough, unless there is a duty to speak.

In the instant case, there may be a fact question as to whether the appellees failed in their duty to disclose the provisions of the policy when it was issued. However, this is a moot point because it is undisputed that the policy was sent to the appellants in January 1989, and it contained the provision at issue. Furthermore, whether or not there was a misrepresentation in Liberty Life's letter to appellants in October 1992 is of no consequence because the limitations period expired in January 1992, at the latest. Thus, any concealment or misrepresentation did not sufficiently toll the limitations period in this case. Even accepting the Elders' contentions as being true, their complaint was still not timely filed.

The appellants' remaining argument is that their cause of action in contract did not accrue until April 1993, when payments

were terminated. However, this is incorrect. For breach of contract, the true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to successful conclusion. *Oaklawn Bank v. Alford*, 40 Ark. App. 200, 845 S.W.2d 22 (1993). The cause of action accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Id.*

■ The oral contract, which appellants contend was breached, was the alleged promise of appellees to provide appellants with a mortgage-payment disability insurance policy that would pay monthly benefits for up to thirty years. Assuming this promise was made to appellants, as we must on our review of this summary judgment, the promise was breached when appellees caused an insurance policy to be issued to appellants that provided for monthly benefits with a maximum of only sixty months. Consequently, their cause of action accrued when the policy was issued in 1980, and appellants could have commenced their action at that time. It is only because appellants were not put on actual notice of the breach until they received a copy of their policy in January 1989 that the three-year limitations period was tolled until that late date. But for purposes of the statute of limitations, the appellants were not entitled to wait until May 1, 1993 (when payments were actually terminated), to bring suit against the appellees. Their action had accrued and become time-barred long before then.

■ Viewing the undisputed facts in the light most favorable to the appellants, we find that there were no genuine issues of material fact and that the trial court committed no error in finding that the appellees were entitled to summary judgment as a matter of law. Therefore, the judgment of the trial court is affirmed.

Affirmed.

PITTMAN, JENNINGS, and ROAF, JJ., and HAYS, S.J., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I agree with the appellants that summary judgment was improperly entered contrary to Rule 56 of the Arkansas Rules of Civil Proce-

dure. Material issues of fact exist concerning (a) whether the alleged implied contract existed and (b) whether appellants knew or reasonably should have known more than three years before they filed suit that the mortgage disability insurance policy sold to them by a bank officer would not pay benefits for more than sixty months on their thirty-year mortgage. Thus, I would reverse and remand for trial.

Joseph Elder and Sharon Lee Elder financed the purchase of a Boone County house with Security Bank of Harrison by executing a loan agreement on August 11, 1980, and by securing the loan with a thirty-year mortgage on the property. When the Elders secured the financing, Barry Molder, an employee of Security Bank, sold them a mortgage payment disability insurance policy through First Pyramid Life Insurance Company.

The Elders assert that Molder assured them that the mortgage payment disability policy would insure that the mortgage payments would be made in the event that Joseph Elder became disabled during the repayment period. First Pyramid issued its policy — No. SLO12961 — effective August 11, 1980, for thirty years. *The Elders did not receive a copy of their policy for more than eight years.* Sharon Elder believed that the policy application was their policy until they finally received the policy by letter from First Commercial Mortgage Company dated January 5, 1989, almost a year after Joseph Elder became disabled.

Joseph Elder became totally disabled March 31, 1988. The successors-in-interest to First Pyramid Life (Security Benefit Life Insurance Company, Integon Life Insurance Company, and Liberty Life Insurance Company, respectively) made mortgage payments of $300 each month until April 29, 1993, when payments were terminated based on the following language at Paragraph 1 of the policy:

> The insurance provided hereunder shall be for the purpose of paying monthly indemnification during the Total Disability of the Insured, in the amount specified in the Policy Schedule of this Policy. *In no event shall the periodic indemnity payable hereunder in the event of disability exceed the lesser of (a) sixty months of such payments, nor (b) the aggregate of the periodic scheduled unpaid installments of indebtedness owed the irrevocable beneficiary by the Insured so disabled; nor shall it exceed the original indebtedness divided by the number of periodic installments, nor be payable following the death of the Insured.* No

insurance shall be provided hereunder unless the indebtedness to be insured shall be repayable in substantially equal monthly installments during the term of coverage. [Emphasis added.]

Sharon Elder became concerned about the term that mortgage payments would be made under the policy after she received a copy of the policy schedule on May 21, 1992, and after receiving disability claims worksheets, referred to as "check stubs" in the briefs and the trial judge's November 5, 1998, letter to counsel from Integon Life. The worksheets included a coded indicator that read "expiry date 05/01/93." Mrs. Elder consulted Donald Bishop, the attorney who represented her husband in his claim for Social Security disability benefits, based on her concern that the insurance might have been for five years rather than thirty years. Bishop wrote Security Benefit Life a letter dated September 8, 1992, requesting information on whether the term of insurance had been reduced. On October 19, 1992, Ellen Long, a customer service representative with Liberty Life Insurance, the successor to Integon, responded to Bishop's request. The opening paragraphs of her response state: "*I am writing in regard to your request concerning information on Joseph C. Elder. This policy was issued in September 1980 for a monthly benefit of $300 for a 30 year term. There has been no waivers* (sic) *signed by Mr. Elder reducing the term of mortgage disability insurance from 30 years to any lesser amount.*" On April 28, 1993, Andrea Wright of the Claims Division of Liberty Life issued a letter to Joseph Elder with an opening paragraph which read:

> Our check for $ 4/27/93 representing disability benefits from 3/30/93 to 4/29/93 was mailed to First Commercial Mortgage on 4/27/93. This completes payment of your disability as benefits have been paid for the maximum period of 60 months as provided in your policy [*sic*].

The Elders filed suit on December 30, 1993, against The Security Bank of Harrison, First Commercial Mortgage, and Liberty Life Insurance. Their complaint alleged that when Joseph Elder applied for the mortgage-payment disability insurance policy they were not advised by Barry Molder and could not have known in the exercise of reasonable care that the coverage provided by the policy was for a term less than the mortgage obligation, and that Molder knew or reasonably should have known when the policy was issued that they intended to purchase insurance coverage for the full term of their mortgage obligation. They claimed damages for

breach of contract and negligence. Their answers to interrogatories asserted that Molder assured them at the closing of their financing that the policy for which they applied would pay off their mortgage if Joseph Elder were ever disabled.

In their answers to interrogatories, Security Bank and First Commercial stated that they did not know whether Security Bank's employees advised the Elders that disability insurance coverage would be limited to sixty months. After Security Life and First Commercial filed cross-claims against Liberty Life for breach of contract and negligence based on the failure of First Pyramid to provide the Elders with a copy of the insurance policy or policy schedule until after Joseph Elder became disabled, Liberty Life filed an amended answer in which it again denied liability and affirmatively pled the three-year statute of limitations found at Ark. Code Ann. § 16-56-105 (Repl. 1987) as a bar to recovery by the Elders. In reply, the Elders asserted reliance on the October 19, 1992, letter from Ellen Long of Liberty Life that the policy provided for a $300 monthly benefit for a thirty-year term and that Liberty Life did not inform them that the benefits would be terminated until April 28, 1993. Thus, the Elders contended that the statute of limitations was tolled until April 28, 1993, the first date they claim they knew or reasonably should have known that the benefits would not be paid as they had been assured by Molder when they obtained financing in 1980.

The trial judge granted summary judgment on the view that the Elders "knew or should have known of the limited term (five years) payments under the policy when they received the 'check stubs' with each check issued under the terms of the disability policy . . . . The first 'check stub' was received by the Plaintiffs in May of 1988. The applicable Statute of Limitations expired three years from that date."

But viewing the evidence in the light most favorable to the Elders, as we are required to do in conducting appellate review of decisions granting summary judgment, leaves me convinced that the evidence they presented left material questions of fact unanswered. A genuine issue of material fact exists about whether Barry Molder assured the Elders that the financing for which they applied in 1980 would pay off their mortgage were Joseph Elder to become disabled. A genuine issue of material fact exists about whether the

Elders should have known when they received Ellen Long's letter that Liberty Life would not pay benefits in accordance with the representation they received from Molder, given that Long's letter conflicted with the disability worksheets, the Policy Schedule that they received in 1992, and the language of the policy that they received in January 1989.

Furthermore, I do not see how one can properly conclude that appellants' causes of action for breach of contract and negligence accrued until after the benefits had ceased in 1993. Our decisions consistently hold that the statute of limitations for contract actions runs from the point at which the cause of action accrues rather than the date of the agreement, and the test in determining when the cause of action accrues is to determine the time when the plaintiff could have first maintained action to successful conclusion. *Davenport v. Pack*, 35 Ark. App. 40, 812 S.W.2d 487 (1991). The date that the cause of action accrues determines the period of limitations in contract actions, not the date of the agreement. *Eckels v. Ark. Real Estate Comm'n*, 30 Ark. App. 69, 783 S.W.2d 864 (1990). I do not understand how the Elders could have brought an action for breach of contract until the alleged breach occurred.

Unlike the majority, I do not deem the January 5, 1989, date that appellees delivered the insurance policy to be the proper date for starting the statute of limitations for either cause of action asserted by the Elders. Granted, in January 1989, the Elders had been provided an insurance policy containing language different from what they understood Barry Molder had induced them to purchase. But they had no way of knowing what the policy stated for more than eight years after the financing took place. *Furthermore, appellees had not even delivered the policy schedule prescribed by their policy until May 21, 1992, more than three years after the January 5, 1989 date that the policy was delivered, and almost twelve years after they entered into the contract. According to the reasoning adopted by the majority, the Elders should have sued appellees for breach of contract before appellees even delivered the policy schedule despite the fact that they were plainly receiving the very benefits for which their lawsuit would have claimed and at a time when the document that would govern their contractual rights had not even been delivered by the appellees.* Rather than do that, they made what appears to have been an honest attempt to have appellees clarify their situation. They received information in the letter from Ellen Long that appeared to confirm their original under-

standing and allay Sharon Elders's concerns until the disability benefits terminated at the end of April 1993. Then they knew that their expectations had been disappointed.

Appellants had every reason to rely upon the October 17, 1992, letter from Ellen Long until they received the April 28, 1993, letter from Andrea Wright announcing that benefits had been completely paid. I certainly do not agree that whether appellants acted reasonably in relying upon Long's letter is an issue of law. Therefore, I would hold that the statute of limitations on appellants' breach of contract claim was tolled until April 28, 1993.

I see no reason why the Elders should have brought an action to reform the insurance contract when Ellen Long had provided them with a letter that allayed their concerns. They were receiving the benefits for which they had bargained when Long's letter arrived. Long's letter stated that the policy term had not been reduced from the thirty-year period of their mortgage liability. Thus, it seems that the Elders have now been penalized for not suing appellees after receiving what might ordinarily be considered written assurance that their policy was consistent with what they had secured when they decided to obtain the mortgage disability protection. This is the first time I have ever seen insurance companies and a lending institution complain about being sued too slowly. That the appellees do so while having plainly contributed to the confusion that produced the delay is more than slightly ironic.

Likewise, our cases show that a claim for negligence accrues when harm ensues, not merely when the negligent act occurs. In *Midwest Mut. Ins. Co. v. Ark. Nat. Co.*, 260 Ark. 352, 538 S.W.2d 574 (1976), our supreme court held that a cause of action for an insurance agent's negligent failure to obtain insurance coverage for a vehicle did not accrue on the date of the failure, but accrued no earlier than the date when suit was filed against the insured and it was required to assume the cost of its own defense because of the agent's negligence. Similarly, an insured's claim against an insurer and adjuster for bad faith and negligence in failing to settle within policy limits was held to have accrued when the insured was held liable to accident victims in the underlying tort action, not an earlier date when the insurer failed to respond to settlement letters. *Carpenter v. Automobile Club Interinsurance Exchange*, 58 F.3d 1296 (8th Cir. 1995).

Counsel for appellees admitted during oral argument, and with commendable candor, that he did not know how appellants could have asserted an action for negligence before April 28, 1993, the first date that they could have known that they were damaged by the decision to terminate benefits. If Molder was negligent in failing to provide the insurance protection that appellants desired in 1980, appellants certainly had no claim until they were damaged by that negligence in May 1993 by being obligated to pay the mortgage payments to First Commercial despite Joseph Elder's disability. Any other view amounts to saying that appellants could have sued the appellees for negligence before they sustained damage.

I would hold that appellants' cause of action for negligence did not accrue until they were forced to pay the May 1993 mortgage payment and the final element of that claim — their damage on account of having to pay the mortgage payments—occurred. It is unrealistic to expect parties to file lawsuits until they have been damaged, and it is unfair to hold the failure to file a lawsuit against the innocent appellants in this case, where genuine issues of material fact are so clearly present, and where the record plainly shows that appellees are responsible for the confusion that produced the delay.[1]

---

[1] It appears that the trial court and the majority differ in their interpretation of when the statute of limitations expired with regard to the contract and negligence actions. As I read the trial court's order at pages 3-4 of the majority opinion, the trial court found that the statute of limitations for both causes of action began in May 1988 and expired on May 1991. However, I read the majority opinion to hold that the statute of limitations for the contract action was tolled until January 1989, when the Elders received their copy of their policy (page 7). This, of course, would mean that the statute of limitations expired in January 1992, before the appellants filed their suit. It is obvious that a cause of action cannot be tolled until 1989 if it began in 1988. If the trial court is correct, then the appellants had until May 1994 to file their contract action and their suit filed on December 20, 1993, was timely.

With regard to the negligence claim, the trial court held, again at pages 3-4 of the majority opinion that the statute of limitations for both causes of action expired in May 1991. However, at page 6 of the majority opinion, the majority states that whether or not there was a misrepresentation in Liberty Life's letter to the appellants in October 1992 is of no consequence because the limitations period expired in January 1992, "at the latest." This appears to be in direct conflict with the trial court's finding that the statute of limitations expired in May 1991. Of course, if January 1992 is the correct expiration date, the appellants' negligence claim is precluded, but the point is that if the majority cannot agree with the trial court on the expiration of the applicable statutes of limitation, a material question in this regard exists that dictates reversal.